United States Court of Appeals,

Fifth Circuit.

No. 92-7048.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,

v.

Evelyn Gretchen BELLI f/k/a Gretchen Riddell and Gretchen Riddel Ritchey, Defendant-Appellant.

Jan. 26, 1993.

Appeal from the United States District Court for the Southern District of Mississippi.

Before DAVIS, JONES, Circuit Judges, and PARKER[1], District Judge.

W. EUGENE DAVIS, Circuit Judge:

I.

The FDIC sued Evelyn Gretchen Belli ("Belli") for the amount due on several personal guarantees and a promissory note. Belli raised the affirmative defense that the FDIC's claims had expired under the applicable statute of limitations. The district court rejected this defense, granted the FDIC's motion for summary judgment and denied Belli's motion for summary judgment. 769 F.Supp. 969 (S.D.Miss.1991). Belli appealed. We REVERSE and REMAND.

II.

From January 1981 through February 1983, Belli executed a series of continuing personal guarantees. In those documents, she agreed to personally guarantee $916,293.54 of any indebtedness owed by the Riddell Corporation to the Mississippi Bank of Jackson, Mississippi ("Bank"). In September of 1982, Belli executed and delivered to the bank a promissory note for $98,500. Payment under the guarantees and promissory note was due on demand. On August 8, 1983, the Bank made demand on Belli for payment under the guarantees and the promissory note.

On May 11, 1984, the FDIC was appointed receiver of the bank. That same day, in its corporate capacity, the FDIC purchased the notes and continuing guarantees. The FDIC filed suit

[1]Chief Judge of the Eastern District of Texas, sitting by designation.

on May 7, 1990, seeking to recover the outstanding balance on the promissory note, as well as the amount due on the continuing guarantees. The district court granted the FDIC's motion for summary judgment, and denied Belli's motion for summary judgment, ruling that 28 U.S.C. § 2415(a) did not bar the FDIC's suit. It then entered judgment in the amount of $945,614.37. Belli timely appealed.

## III.

This appeal requires us to interpret two statutes of limitations. The first, 28 U.S.C. § 2415(a), applies generally to contractual claims asserted by the government. It bars such claims if they are not "filed within six years after the right of action accrues...." The second statute, 12 U.S.C. § 1821(d)(14), part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), specifies that the statute of limitations on a contractual claim held by the FDIC runs from the later of (1) the date on which the FDIC is appointed conservator or receiver; or (2) "the date on which the cause of action accrues." Section 1821(d)(14) therefore favors the FDIC in a way that § 2415(a) does not explicitly address.

Because the events giving rise to this suit occurred before the enactment of FIRREA, however, both parties disagree, over § 1821(d)(14)'s applicability to this case. Belli argues that the FDIC's claims had expired under § 2415(a) before the enactment of FIRREA. Therefore, she argues, the statute of limitations in FIRREA could not revive the FDIC's claims. The FDIC argues that § 2415(a) did not bar its claims because the cause of action on those claims did not "accrue" until the FDIC acquired them by assignment. In any event, argues the FDIC, § 1821(d)(14) applies retroactively to revive its claims. We consider these arguments below.

## A.

Our first task is to decide when a cause of action "accrues" within the meaning of § 2415(a). The parties disagree over the meaning of the word "accrues" in that statute, as applied to an FDIC suit on a note. Belli argues that the word refers to the moment in which the payor on the note came into breach. The FDIC contends that the word refers to the moment in which the government acquired the right to sue on the note.

Various circuits have taken conflicting positions on this issue. For example, the Tenth Circuit

applied § 2415(a) to an FDIC suit on a note, and held that the cause of action accrued on the date the note matured. *FDIC v. Galloway,* 856 F.2d 112, 116 (10th Cir.1988). However, In *FDIC v. Hinkson,* 848 F.2d 432, 434 (3rd Cir.1988) ("*Hinkson*"), in which the FDIC sued on a note, the Third Circuit held that, for purposes of § 2415(a), the action accrued when the FDIC acquired the failed bank's assets, including the note. And in an FDIC suit against former officers and directors of a failed bank for breach of fiduciary and statutory duties, the Ninth Circuit held that the claims accrued under § 2415(a) when the FDIC acquired them by assignment. *FDIC v. Former Officers & Directors of Metropolitan Bank,* 884 F.2d 1304, 1307-09 (9th Cir.1989) ("*Metropolitan Bank* ").

The starting point in the *Hinkson* and *Metropolitan Bank* analysis is that the term "accrues" is ambiguous. According to the *Hinkson* court, when a federal agency comes into possession of claims by assignment, and where the actionable event occurs before that time, "accrual could begin" either when "the actionable event occurs" or when "the cause of action is assigned to the federal government." *Hinkson,* 848 F.2d at 435. Similarly, the *Metropolitan Bank* court said that "as an analytical matter," the claims before it "could be deemed to accrue either when the faulty lending practices occurred or when the FDIC acquired the claims by assignment." *Metropolitan Bank,* 884 F.2d at 1307.

In our view, however, the term "accrues" does not admit of such an ambiguous construction. Neither the FDIC nor the opinions on which it relies point to authority for the proposition that a transfer from one party to another of a cause of action that has already accrued somehow effects a new accrual for purposes of § 2415(a). To the contrary, the ordinary usage of the term "accrues" is that a cause of action "accrues" when "it comes into existence." *U.S. v. Lindsay,* 346 U.S. 568, 569, 74 S.Ct. 287, 288, 98 L.Ed. 300 (1953). Assignment of a cause of action that has already accrued does not ordinarily re-commence the limitations period.

Although we will consider at greater length 12 U.S.C. § 1821(d)(14), it is worth noting here that this provision reinforces our understanding of § 2415(a). In § 1821(d)(14)(A), Congress adopted a statute of limitations that runs from "the date the claim accrues." In the next subsection, however, Congress specified that the limitations period

begins to run on the later of: (i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B). Section 1821(d)(14) supports our reading of the word "accrues" in two ways. First, it shows that Congress knows how to clearly specify that a statute of limitations runs from the time that a government entity is appointed receiver of a bank. The absence of similar language in § 2415(a) suggests a contrary meaning. Second, in § 1821(d)(14)(B)(ii), Congress uses the word "accrues" in a manner inconsistent with the government's reading of the word "accrues" in § 2415(a); to apply the FDIC's proposed definition of accrues to subsection (ii), above, would render subsection (i) redundant.

The FDIC argues that Congress, when it enacted § 1821(d)(14), merely intended to clarify what it had meant all along in § 2415(a). It suggests that the existence of a circuit split over the meaning of § 2415(a) gives rise to the inference that Congress intended to settle the issue. However, the case on which the FDIC relies, *NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1500-1501, (5th Cir.1990) ("*Cowden*"), is distinguishable.

In *Cowden,* we held that pre-FIRREA law authorized the FDIC to transfer the fiduciary appointments held by an insolvent bank to a federally created bridge bank. *Cowden,* 895 F.2d at 1490. After analyzing pre-FIRREA law, we found "additional support for our holding" because FIRREA amendments to the bridge bank statute, codified at 12 U.S.C. § 1821(n), clearly gave the FDIC the disputed authority. *Cowden,* 895 F.2d at 1500. We recognized that "reliance on subsequent legislative actions to determine the meaning of an earlier statute is hazardous." *Cowden,* 895 F.2d at 1500. Nevertheless, "several considerations" led us to conclude that the FIRREA amendments in question clarified, rather than changed, pre-FIRREA law. First, the new language in FIRREA was not inconsistent with our reading of the old, pre-FIRREA, language. *Cowden,* 895 F.2d at 1500. Second, the legislative history discussing the FIRREA amendments suggested "Congress was primarily concerned with clarifying existing law." *Cowden,* 895 F.2d at 1500. And finally, the existence of a circuit split on the issue may have suggested that "Congress was provoked to enact an amendment to clarify rather than change the law." *Cowden,* 895 F.2d at 1501.

However, the text and legislative history of § 1821(d)(14) do not support the conclusion that

it clarifies, rather than changes, § 2415(a). First, the new language in FIRREA is inconsistent with the reading that the FDIC asks us to attach to § 2415(a); Congress's use of the term "accrues" in FIRREA suggests that the term does not refer to the moment in which a private party assigns a cause of action to the FDIC. *See* 12 U.S.C. § 1821(d)(14)(B)(ii). Second, the scant legislative history of this section indicates that it was meant to modify existing law by lengthening the limitations period applicable to the FDIC. For example, in a passage to which the FDIC refers, Senator Riegle said:

> Section 212 of the conference bill [codified at 12 U.S.C. § 1821] provides for *extended* statute of limitations periods for claims brought by the FDIC in its capacity as conservator or receiver of a failed institution.... *Extending* these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation...."

135 Cong.Rec. 10,205 (1989) (emphasis added). Thus, instead of clarifying the reach of § 2415(a), this passage reflects a congressional intent in § 1821(d)(14)(B) to lengthen the limitations periods applicable to the FDIC. More generally, Representative Ortiz said: "I understand that this bill would redefine and augment the powers of the [FDIC].... The powers set forth in this bill are, in many respects, new...." 135 Cong.Rec. H 5003 (August 3, 1989). Third, while the existence of a circuit split militates in favor of the FDIC's position, we are reminded that "individually" this consideration "might not justify any conclusion as to Congress's intent." *Cowden,* 895 F.2d at 1501.

The FDIC argues that two recent decisions of this Circuit compel us to adopt the position taken by the Third and Ninth Circuits. We disagree. In the first case, *FDIC v. Mmahat,* 907 F.2d 546 (5th Cir.1990) ("*Mmahat*"), we held that an FDIC claim against former general counsel for a then-defunct savings and loan had not prescribed. We held that the Louisiana limitations period was tolled until the attorney-client relationship ended. Coincidentally, this relationship ended when the FDIC took over the filed institution as receiver. *Mmahat,* 907 F.2d at 551. Footnote 5 of that opinion cited § 2415(a) for the proposition that "[t]he FDIC gets the benefit of an extended period which begins to run from the time it took over as receiver." *Mmahat,* 907 F.2d at 551. However, given our holding, the footnote is dicta and we decline to rely on it.

The second case, *FDIC v. Wheat,* 970 F.2d 124 (5th Cir.1992), is also inapplicable. *Wheat* involved an FDIC suit against a bank's former director for negligence, breach of fiduciary duty, and breach of contract. We held that the FDIC filed suit within the § 2415(a) limitations period because

the period "began to run when the FDIC was appointed receiver." *Wheat,* 970 F.2d at 128. However, in *Wheat,* we did not need to analyze the term "accrues" in § 2415(a). Rather, we relied on 28 U.S.C. § 2416(c), which excludes from the computation of the § 2415(a) limitations period times during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with responsibility to act in the circumstances...." *Wheat,* 970 F.2d at 128. Because the loan that gave rise to *Wheat* had been made after an FDIC inspection and before receivership, the FDIC could not reasonably have known about the loan. *Wheat,* 970 F.2d at 128.

In *Wheat,* we clearly stopped short of interpreting the term "accrues" in the manner here suggested by the FDIC. Instead, we based our conclusion on § 2416's discovery rule, as applied to a breach of fiduciary duty case. The FDIC has not argued that, and we do not see how, § 2416 could apply in this case, where the causes of action are clear on the faces of the guarantees and promissory note at issue. So our holding in *Wheat* does not apply here.

Belli and the FDIC have also raised nontextual arguments to support their respective readings of § 2415(a). Belli contends that we must construe any ambiguities in § 2415(a) in her favor, because Congress enacted that statute to protect citizens against whom the government brings stale claims. *See Guarantee Trust Co. v. United States,* 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224 (1938) (A statute of limitations "is a statute of repose, designed to protect the citizens from stale and vexatious claims, and to make an end to the possibility of litigation after the lapse of a reasonable time."); *United States v. Cardinal,* 452 F.Supp. 542, 544 (D.Vt.1978) (The purpose of § 2415(a) "is to increase fairness to private litigants dealing with the Government."). The FDIC responds that the Third and Ninth Circuits rejected the reasoning of *Cardinal,* opting instead for a rule of construction that courts should presume that a statute of limitations does not bar a suit brought by the government. The FDIC also raises the policy argument that Belli's reading of § 2415(a) would disadvantage the FDIC by giving it a short period in which to file suit. Because § 2415(a) is unambiguous, we need not resort to interpretive rules or policy inquiries. So we decline to address these arguments.

B.

Because we have decided that § 2415(a) barred the FDIC's suit, we must decide the extent to which § 1821(d)(14) applies retroactively. We agree with the FDIC that § 1821(d)(14) applies to claims held by the FDIC that were alive on August 9, 1989, FIRREA's effective date. Statutory changes that relate only to procedure or remedy usually apply immediately to pending cases. *United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980). And statutes of limitations are considered to be procedural rather than substantive. *Fust v. Arnar-Stone Labs, Inc.,* 736 F.2d 1098, 1100 (5th Cir.1984) ("*Fust*"). In *Fust,* we said: "Statutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are unconstitutionally cast." *Fust,* 736 F.2d at 1100.

However, § 1821(d)(14) does not revive claims that had expired before August 9, 1989. In an analogous case, we held that a Louisiana statutory suspension of prescription did not revive a cause of action that had prescribed before the statute's effective date. *Trizec Properties, Inc. v. United States Mineral Products Company,* 974 F.2d 602, 606-08 (5th Cir.1992) ("*Trizec*") (applying Louisiana law). We based our conclusion on the fact that the statute "contains no language of revival of an expired (i.e. prescribed) cause of action." *Trizec,* 974 F.2d at 606. The Seventh Circuit followed the same approach when it construed 42 U.S.C. § 3613(a)(1)(A). It said: "In the absence of evidence of a contrary legislative purpose, "subsequent extensions of a statutory limitation period will not revive a claim previously barred.' " *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1527 (7th Cir.1990) (citations omitted). Because § 1821(d)(14) also lacks a clearly expressed intent to the contrary, we hold that it does not revive claims that expired before its effective date. We note that at least one other court has expressed an unwillingness to allow § 1821(d)(14) to revive stale claims. *See Resolution Trust Corp. v. Krantz,* 757 F.Supp. 915, 922 (N.D.Ill.1991).

The FDIC's causes of action under the guarantees and promissory note accrued on or before August 8, 1983, the date the Bank demanded payment. Therefore the six year limitations period under § 2415 expired before August 9, 1989, FIRREA's effective date. So FIRREA's extended statute of limitations did not revive any of the FDIC's claims against Belli.

## IV.

For the foregoing reasons, we REVERSE the district court's denial of Belli's motion for summary judgment; we also REVERSE the order granting the FDIC's motion for summary judgment and render judgment in favor of Belli.

REVERSED and RENDERED.