IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-5273

---

RESOLUTION TRUST CORPORATION,
as Receiver of Jasper Federal
Savings & Loan Association,

Plaintiff-Appellant,

versus

JOHN H. SEALE, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

( January 26, 1994 )

Before HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case concerns whether the Resolution Trust Corporation can sue three former directors of a savings and loan under applicable federal and state statutes of limitations. We must decide whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. 101-73, 103 Stat. 183 (Aug. 9, 1989), revives claims barred by state statutes of limitations, the applicability of the general federal statute of limitations, and whether in this case the doctrine of "adverse domination" tolls the state statute of limitations.

I.

On March 10, 1992, the RTC sued John Seale, Virgil Martindale, and Richard Mays, former directors of Jasper Savings & Loan Association. The RTC alleged breach of fiduciary duty of care, gross negligence, and breach of fiduciary duty of obedience. The allegations concern the "Vanderburg loan" and the "Neuhoff loan," transactions allegedly involving regulatory violations and grossly negligent investments. No defendant served as the chairman of the Jasper board when it approved or initially funded the projects. The defendants did not constitute a voting majority of the Jasper board at any time.

The Jasper directors, including Seale, Martindale, and Mays, approved the Vanderburg loan on November 10, 1983 with initial funding soon following. Jasper loaned $7,750,000 to Vanderburg & Associates, a Texas joint venture, for the construction of office buildings in Austin. The RTC alleges that the project was located outside of Jasper's lending area, violated loan-to-one and concentration regulations, and that the Jasper directors never obtained a feasibility study.

The Jasper directors, including defendants, approved the Neuhoff loan on January 12, 1984 and promptly funded the project. Jasper purchased a participation of $3,000,000 from Western Gulf Savings & Loan Association, the lead lender, who had made a $13,000,000 loan for the development of a commercial tract in Dallas. The RTC alleges that this project was also located outside

2

of Jasper's lending area, and that the Jasper directors failed to assess properly the propriety of the investment.

Jasper became insolvent, and, around March 10, 1989, the Federal Home Loan Bank Board appointed the Federal Savings & Loan Insurance Corporation as conservator. On August 9, 1989, FIRREA took effect, and the RTC became conservator. The RTC sued the defendants on March 10, 1992. The district court granted summary judgment, ruling that applicable statutes of limitations barred the lawsuit. The RTC appealed. We affirm.

II.

The RTC sued for breach of fiduciary duty of care, gross negligence, and breach of fiduciary duty of obedience. In Texas, breach of a fiduciary duty of care is a tort subject to a two-year limitations period. Gross negligence is subject to the same statute. Breach of fiduciary "duty of obedience" also sounds in tort and comes under the two-year rule. See Tex. Civ. Prac. & Rem. Code § 16.003; Russell v. Campbell, 725 S.W.2d 739, 744 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.).

For the purpose of applying the Texas statute of limitations, the cause of action accrues when facts exist that authorize a claimant to seek a judicial remedy. Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990). The most recent claims in this case accrued when the Jasper directors approved and funded the Neuhoff loan on January 12, 1984, which means that the last limitations period expired on January 12, 1986. The RTC sued on March 10, 1992. Under the Texas two-year statute, the RTC cannot

3

bring this case because it filed suit more than six years after expiration of the limitations period.

The RTC argues that FIRREA's internal limitations period revives claims barred by state statutes of limitations. The FIRREA limitations provision states, in pertinent part:

> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be-- . . . .
>
> > (ii) in the case of any tort claim, the longer of--
>
> (I) the 3-year period beginning on the date the claim accrues; or
> (II) the period applicable under State law.

12 U.S.C. § 1821(d)(14)(A). The FIRREA limitations provision also states, in pertinent part:

> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such paragraph shall be the later of--
> > (i) the date of the appointment of the Corporation as conservator or receiver; or
> > (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B).

The RTC assumed the conservatorship on August 9, 1989, and the FIRREA three-year limitations period started to run on that date. 12 U.S.C. § 1821(d)(14)(B)(i). The RTC sued on March 10, 1992, less than three years after it assumed the conservatorship and the limitations period started to run. Under FIRREA, then, the RTC sued within the three-year limitations period. 12 U.S.C. § 1821(d)(14)(A)(ii). Thus, this suit is timely if we conclude

4

that the FIRREA three-year provision applies to claims barred when FIRREA became effective.

                                    III.

In interpreting statutes of limitations, we can presume that the limitations period promotes the value of repose by protecting citizens from stale and vexatious government claims, <u>FDIC v. Belli</u>, 981 F.2d 838, 842 (5th Cir. 1993); <u>see also</u> <u>Guaranty Trust Co. v. United States</u>, 304 U.S. 126, 136 (1938), or we can view statutes of limitations in a way that protects governmental claims by keeping the courthouse doors open.  <u>Belli</u>, 981 F.2d at 842; <u>see also</u> <u>FDIC v. Former Officers & Directors of Metropolitan Bank</u>, 884 F.2d 1304, 1307-09 (9th Cir. 1989); <u>FDIC v. Hinkson</u>, 848 F.2d 432, 434 (3rd Cir. 1988).  We have styled these arguments as "interpretive rules or policy inquiries" that need not be reached when a limitations provision is unambiguous.  <u>Id.</u>

Consistent with this approach, we follow the plain language of the FIRREA limitations provision understood in light of congressional intent.  Our refusal to dwell on the purpose of statutes of limitations in general does not prevent us from using interpretive tools like legislative history; it simply keeps us from philosophizing about the intrinsic properties of limitations periods and how they relate to the value of repose and the vindication of governmental interests.  Put simply, we need not look to general policy considerations where the particular policy decisions, found in the text of the statute and the history of its enactment, dispose of the case.  <u>Belli</u> accommodates the competing

5

policies by invoking the doctrine of clear statement--Congress can revive stale claims but must do so clearly.

We follow the plain language of federal statutes, abjuring a literalist approaat does not serve but rather frustrates congressional intent. <u>Demarest v. Manspeaker</u>, 111 S. Ct. 599, 604 (1991). FIRREA establishes new limitations periods for bringing FIRREA claims, which seemingly enables the RTC to revive claims that had lapsed under state limitations periods. 12 U.S.C. §§ 1821(d)(14)(A), 1821(d)(14)(B). Logically, this approach would permit the RTC to resurrect claims stale from the early twentieth century. The evidence that Congress intended such a sweeping recovery right is not persuasive.

Given this fact, we have followed other circuits in holding that FIRREA does not revive claims that have lapsed under state limitations periods. <u>See</u>, <u>e.g.</u>, <u>FDIC v. Shrader & York</u>, 991 F.2d 216, 220 (5th Cir. 1993); <u>FDIC v. Bledsoe</u>, 989 F.2d 805, 808 (5th Cir. 1993); <u>FDIC v. Belli</u>, 981 F.2d 838, 842-43 (5th Cir. 1993); <u>FDIC v. McSweeney</u>, 976 F.2d 532, 534 (9th Cir. 1992) <u>cert. denied</u>, 113 S.Ct. 2440 (1993); <u>FDIC v. Hinkson</u>, 848 F.2d 432, 434 (3rd Cir. 1988). The FIRREA limitations period applies to claims that were alive on August 9, 1989, when FIRREA took effect, but not to claims that had expired before then. <u>Shrader & York</u>, 991 F.2d at 220; <u>Bledsoe</u>, 989 F.2d at 808; <u>Belli</u>, 981 F.2d at 842. Under this view, the expiration of the Texas two-year statute before the RTC filed denies the RTC the more generous FIRREA limitations period.

6

This reading of the statutory provision comports with general jurisprudence on limitations periods. New limitations periods usually apply to pending cases and have retroactive effect, Fust v. Arnar-Stone Lab., Inc., 736 F.2d 1098, 1100 (5th Cir. 1984), but the federal government has no right to pursue a case after old limitations periods have expired. Guaranty Trust Co. v. United States, 304 U.S. 126, 142 (1938). Subsequent extensions of a limitations period will not revive barred claims in the absence of a clear expression of contrary legislative intent. Belli, 981 F.2d at 842-43.

The legislative history of FIRREA indirectly mentions resurrecting stale claims. Significantly, however, the legislative record does not contain a clear statement in favor of revival. Senator Donald Riegle, Chairman of the House-Senate Conference Committee on FIRREA, stated that the statute sought "to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that otherwise would have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong. Rec. § 10205 (daily ed. Aug. 4, 1989). He cited Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229, 243 (1976), and Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 311-16 (1945).

Senator Riegle's reference to maximizing recoveries "to the greatest extent permissible by law" that otherwise would have been lost is not necessarily an insistence on revival of barred claims. It might mean creating a new accrual date on all causes of action against a particular thrift after the RTC assumes the

conservatorship. This interpretation is plausible although Senator Riegle cites to U.S. Supreme Court cases holding in part that a legislature may constitutionally revive stale claims.

The legislative record is even more mixed because evidence for the revival approach can be found in a draft Senate bill on FIRREA. The House-Senate Conference Committee rejected a provision in the draft providing that FIRREA could not revive stale claims. The draft Senate bill stated, in pertinent part:

> COMPUTATION OF LIMITATIONS. Notwithstanding any other provision of law, for the purpose of computing whether the applicable limitations period has expired prior to the Corporation's acquisition of the claim, in addition to the item excluded under any other applicable tolling rules, there shall be excluded:
>
> > (1) as to any other action against a director or officer, all periods during which any culpable director or officer continues in such capacity;
> >
> > (2) as to any action against an accountant, attorney, appraiser or other person providing services to the insured institution, all periods during which such party continues to provide services to the insured institution.
>
> If a claim is not already time-barred at the time the corporation acquires it, the [applicable limitations period], shall start anew at the time the corporation acquires the claim.

S. Rep. No. 101-19, 101st Cong., 1st Sess. (1989). The rejected draft prevented the RTC from suing on a claim that had already lapsed before the RTC acquired it. The final version of FIRREA does not contain similar language on the limitations issue.

In short, there is some support in the legislative history for the revival approach, but neither Senator Riegle's statement nor the draft Senate bill supplies the clear statement needed to revive

8

expired limitations statutes. See Belli, 981 F.2d at 842-43. As a result, this case falls under the Texas two-year provision. The Texas limitations statute started to run on November 10, 1983 and January 12, 1984 respectively, but the RTC did not sue until March 10, 1992, well after the two years had expired.

IV.

A general statutory rule usually does not govern if a more specific rule covers the case. Green v. Bock Laundry Mach. Co., 490 U.S. 504, 524 (1989). Under this view, we should apply the more specific FIRREA limitations provision rather than the more general federal limitations statute. The latter states, in pertinent part:

> Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues.

28 U.S.C. § 2415(b). In Belli, however, we gave effect to both FIRREA and Section 2415. Belli, 981 F.2d at 842. Even if Section 2415 were to apply to this case, the question would remain whether that provision revives claims that had lapsed under state limitations statutes.

Section 2415 cannot revive claims barred under a state limitations period when the RTC takes over after the claims have been barred under state law. Randolph v. RTC., 995 F.2d 611, 619 & n.7 (5th Cir. 1993); FDIC v. Wheat, 970 F.2d 124, 128 n.7 (5th Cir. 1992); United States v. Sellers, 487 F.2d 1268, 1269-70 (5th Cir. 1973). Section 2415 could have been applied when the RTC

9

assumed the conservatorship in 1989, see Wheat, 970 F.2d at 128, but, by that time, the Texas two-year limitations period that had started running in 1984 had lapsed, meaning that the latest claim open to the RTC had already been barred.  Thus, the RTC cannot sue under the Section 2415 limitations period.

V.

The doctrine of adverse domination tolls the Texas limitations period until wrongdoing officers and directors relinquish control of the corporation.  We review de novo a district court finding of no adverse domination, treating the issue as a ruling on the law rather than an exercise of equitable discretion.  FDIC v. Dawson, 4 F.3d 1303, 1308 (5th Cir. 1993).  We also use state rather than federal equitable tolling principles.  Id. at 1308-09.  State law asks whether a majority of Jasper's board was more than negligent during the state limitations period.  Id. at 1309-13; Allen v. Wilkerson, 396 S.W.2d 493, 500, 501 (Tex. Civ. App.--Austin 1965, writ ref'd n.r.e.).

Accepting the RTC's proof, we have only that the Jasper board unanimously approved the Neuhoff and Vanderburg loans, and that Seale, Martindale, and Mays did not dissent.  The RTC has not created any fact issues of regulatory violations or fraud, concealment, or other illegal activity amounting to more than negligence.  The RTC argued gross negligence, but provided no more than conclusory assertions in support.  It offered nothing to support a finding that a majority controlled the Jasper board in a more than negligent way.

10

On the other hand, defendants submitted affidavits stating that a majority did not adversely control the Jasper board at anytime during the tolling period.  To be sure, these affidavits did not refute the regulatory violation allegations, but the RTC offered no proof on that front.  The affidavits do suffer from breezy denials of wrongdoing, but given the limited submission by the RTC, they adequately respond to the adverse domination charge.

Defendants challenged the RTC to prove regulatory violations and adverse domination.  They argued that naked assertions would not suffice, and cited In re Lewisville Properties, Inc., 849 F.2d 946 (5th Cir. 1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  These cases demonstrate that the RTC did not meet its burden.

AFFIRMED.