**RESOLUTION TRUST CORPORATION,**
**Plaintiff–Appellee,**

v.

**James M. ARTLEY, et al., Defendants,**
**Third–Party Plaintiffs, Appellants,**

**International Insurance Company, Inc.,**
**Defendant, Third–Party Defendant,**

**The Cincinnati Company, Defendant,**
**Third–Party Defendant.**

**No. 93–9021.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 12, 1994.

diminished capacity are without merit.

C.B. Rogers, John J. Almond, Susan D. Burnell, Rogers & Hardin, Atlanta, GA, Joseph B. Gray, Jr., Simpson & Gray, Tifton, GA, Rebecca M. Lamberth, Peter Q. Bassett, Alston & Bird, Atlanta, GA, for appellants.

John M. Tatum, Michael J. Thomerson, Miller, Simpson & Tatum, Savannah, GA, for John Carey Monroe.

Keith A. Hanson, Hanson & Peters, Chicago, IL, for Cincinnati Ins.

Albert Fendig, Jr., Gilbert C. McLemore, Donna L. Crossland, Fendig, McLemore, Taylor & Whitworth, Brunswick, GA, for Resolution Trust.

Stephen Jacobs, William A. Edelson, Louis G. Corsi, Siff & Rosen, New York City, for International Ins. Co.

Before EDMONDSON, Circuit Judge, GODBOLD and JOHNSON, Senior Circuit Judges.

EDMONDSON, Circuit Judge:

The district court applied the federal common law doctrine of "adverse domination" to toll the state statute of limitations governing plaintiff's claims. We decide, under Georgia law, that the limitations period was not tolled and that the limitation is a bar to all but one of plaintiff's claims. So, we must reverse and remand.

I.

Defendants are former officers and directors of Great Southern Federal Savings Bank ("Great Southern," or the "Bank"). In the mid–1980's, the Bank experienced substantial losses on real estate loans. In June 1989, the Federal Home Loan Bank Board placed Great Southern in receivership, appointing the FSLIC as the Bank's receiver. In August 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), abolished FSLIC and created the Resolution Trust Corporation

("RTC"), which succeeded FSLIC as Great Southern's receiver.

RTC filed this suit in 1992, attacking defendants' lending practices. The complaint accused defendants of negligence, gross negligence, breach of fiduciary duty and breach of contract (but not of fraud) in connection with eighteen separate loans on thirteen projects; the loans ranged in time between August 1982 and August 1985. Defendants moved for partial summary judgment, arguing that most of RTC's claims were time-barred. The district court denied defendants' motion after concluding that application of the adverse domination [1] doctrine was "clearly consistent with federal policy." Defendants appeal.

## II.

FIRREA provides a federal statute of limitations system for claims brought by the RTC as receiver.[2] 12 U.S.C. § 1821(d)(14)(A) & (B). The statute "has been interpreted not to revive stale state law claims acquired by the FDIC." *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1307 (5th Cir.1993); *see also Resolution Trust Corp. v. Seale*, 13 F.3d 850, 853 (5th Cir.1994) ("the federal government has no right to pursue a case after old limitations periods have expired"). "[T]he district court must first determine whether the claims being brought by the [RTC] were viable under the applicable state statute of limitations at the time the [RTC] was appointed receiver. If the state statute has not yet run, the period provided by 12

U.S.C. § 1821(d)(14)(A) then begins to run." *Dawson*, 4 F.3d at 1307.

The district court correctly decided that Georgia's four-year statute of limitations governs RTC's claims. *See Council v. Brown*, 151 Ga. 564, 107 S.E. 867, 871 (1921) (holding that four-year statute of limitations governed bank receiver's claims against directors for negligence); O.C.G.A. §§ 9-3-25 & 26 (four-year statute of limitations for contract claims). Unless RTC can demonstrate that the statute was tolled, defendants may not be sued for loans closed more than four years before RTC's (or, as in this case, FSLIC's) appointment as receiver for Great Southern—that is, before June 21, 1989. In concrete terms, if no tolling occurred, RTC loses its opportunity to sue on all but one loan: the Baypoint Retirement Village Loan ("Baypoint Loan"), dated August 1985.

RTC argues that the district court correctly decided that federal common law's "adverse domination" doctrine operated to toll Georgia's limitations period. Defendants argue that Georgia law applies, and that Georgia law does not recognize "adverse domination" in these circumstances.[3] We agree with defendants. To simplify matters, we discuss RTC's state and federal claims separately.

### A. State Law Claims

RTC's complaint included state law causes of action for negligence and breach of contract. The Fifth Circuit's decision in

---

**1.** "The doctrine of adverse domination ... tolls the statute of limitations for as long as a corporate plaintiff continues under the domination of the wrongdoers." *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1308 (5th Cir.1993).

**2.** The statute provides the following:
(A) In general
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6–year period beginning on the date the claim accrues; or
(II) the period applicable under State law; and
(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or
(II) the period applicable under State law.
(B) Determination of the date on which a claim accrues
For the purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14)(A) & (B).

**3.** Defendants argue as a backup that, in fact, no adverse domination occurred. Because we conclude that state tolling principles apply, we say nothing on this argument.

*Dawson* explains why RTC's state law causes of action are subject to state tolling rules:

> [B]ecause the FDIC is merely acquiring the claims held by the failed bank, the issue is whether the bank would be time-barred if it tried to sue its directors in state court on the date of the FDIC's appointment as receiver. Only if the bank's claims are still viable under state law on that date does the limitations clock start to run anew under FIRREA's limitations provision. Because this step of the analysis is purely a question of state law, there is no justification for applying federal equitable tolling principles to pre-receivership events. If the FDIC is to toll the state statute of limitations prior to its appointment as receiver under the adverse domination doctrine, it must show the district court that the state law of adverse domination would permit tolling.

*Dawson*, 4 F.3d at 1309.

We believe the Supreme Court's decision in *O'Melveny & Myers v. Federal Deposit Ins. Corp.*, — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), is also instructive: "It is hard to avoid the conclusion that [12 U.S.C.] § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at —, 114 S.Ct. at 2054.

Georgia law permits no tolling in this case. *Mobley v. Faircloth*, 174 Ga. 808, 164 S.E. 195 (1932), presented a similar situation. In *Mobley*, the state superintendent of banks took possession of an insolvent bank, accusing the bank's directors of making excessive loans. Because the pertinent loans were made more than four years before suit was filed, defendants' demurrer was sustained. Even though defendants "were in control of the bank continuously from the time of the . . . loans until the failure of the bank," no tolling occurred. *Id.* (syllabus by the court) [4] Given the facts and the outcome of *Mobley*, the applicable law of Georgia seems settled: adverse domination does not apply to this case.

### B. *Federal Claims*

■ RTC argues that its claim for gross negligence was brought under federal law.[5] FIRREA's section 1821(k) permits actions for "gross negligence . . . [as] defined and determined under applicable state law." Thus, RTC says this case is different from cases like *Dawson* and *O'Melveny* (in *Dawson* and *O'Melveny*, FDIC relied exclusively on state law causes of action).

Even if RTC is correct in arguing that section 1821(k) provides a federal source for its gross negligence cause of action, we believe the state limitation and tolling rules must still be consulted before determining whether section 1821(d)(14)(A)'s limitation applies. RTC cites no explicit adoption of a federal limitation or tolling rule that governs its gross negligence claim, and we decline to interpret section 1821(d)(14)(B) to permit the "accrual" of federal causes of action—such as, one for gross negligence—when a state limitation would have barred a suit for gross negligence.[6] Thus, Georgia law also deter-

---

4. RTC's reliance on *Shipman v. Horizon Corp.*, 245 Ga. 808, 267 S.E.2d 244 (1980), is not persuasive. *Shipman* deals with tolling in cases of fraud (where fraud is the cause of action, or where fraud prevents less culpable acts from being discovered); no fraud is alleged in this case.

5. RTC also argues that its breach of fiduciary duty claims are federal in nature—yet another reason why federal common law governs the tolling of these claims. RTC cites *Briggs v. Spalding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891), which established common law standard of care for directors of national banks. But we doubt this argument survives the *O'Melveny* decision. *See O'Melveny*, — U.S. at —, 114

S.Ct. at 2054 (argument that FIRREA, as a *"non-exclusive* grant of rights to the FDIC as receiver" should be supplemented by federal common law "demolished by those provisions of FIRREA which specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver") (emphasis in original). We need not decide this point, however, and we assume for the sake of discussion that RTC's fiduciary duty cause of action is federal in nature.

6. Put differently, FIRREA does not provide a clear enough statement that RTC's appointment permits the bringing of claims which, under analogous state causes of action, would have been barred. In *Seale*, the court refused to apply

mines whether RTC's federal claims are time-barred. *See O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054 ("In answering the central question of displacement of [state] law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law."); *see also Seale,* 13 F.3d at 852–53 (applying state limitations period to gross negligence claims); *cf. Hawthorne v. Wells,* 761 F.2d 1514, 1515 n. 7 (11th Cir. 1985) ("[w]here Congress has provided no limitations period for a federal claim …. a court must borrow the applicable limitations period and tolling rules from the state") (citing *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)).

But RTC argues that, even if Georgia's limitations period applies, its federal causes of action should be preserved by applying federal tolling principles.[7] RTC argues that "federal interests" overrule the state's "strong polic[y] of repose." *See Tomanio,* 446 U.S. at 485–88, 100 S.Ct. at 1795–97. But, even if we accept the notion that "federal interests" have an effect on the choice of tolling law, we cannot conclude that state tolling principles are necessarily "inconsistent" with federal policy.

RTC advances "uniformity" concerns, arguing that application of state tolling rules would throw FIRREA's operation into chaos. But, as an assessment of the nation's policy, this argument seems weak: FIRREA contemplates diverse results by permitting state statutes of limitations to bar actions instead of constructing a "uniform" federal regime.

*Cf. Dawson,* 4 F.3d 1303 (two-year statute of limitations under Texas law) *with F.D.I.C. v. Cocke,* 7 F.3d 396 (4th Cir.1993) (one-year statute of limitations under Virginia law); *see also Tomanio,* 446 U.S. at 489, 100 S.Ct. at 1797 ("statutory reliance on state law obviously means that there will not be nationwide uniformity") (quoting *Robertson v. Wegmann,* 436 U.S. 584, 594 n. 11, 98 S.Ct. 1991, 1997 n. 11, 56 L.Ed.2d 554 (1978)). And, in cases where section 1821(d)(14)(A)'s limitation applies, Congress permits the application of state statutes of limitations to the extent they exceed the prescribed federal period. Congress did not put much stress on uniformity.

RTC also speaks generally about "comprehensively regulated federal programs," arguing that a state tolling law frustrates the banking system. In this case, however, RTC is not "regulating" a bank, at least not in the ordinary sense; instead, RTC is a plaintiff, in possession of Great Southern's assets, pursuing claims on behalf of the institution. "[A] state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success were the benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." *Robertson v. Wegmann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978); *see also O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2055 ("there is no federal policy that the fund should always win").

### III.

Congress was free to establish a uniform limitations period reaching back several

---

sections 1821(d)(14)(A) & (B) in such a way as to permit RTC's gross negligence claim to accrue on the date of its appointment as conservator: "this approach would permit the RTC to resurrect claims stale from the early twentieth century. The evidence that Congress intended such a sweeping recovery right is not persuasive." 13 F.3d at 852–53. Congress recently altered the limitations period for gross negligence claims. *See* 12 U.S.C. § 1441a(b)(14) (1993) (extending statute of limitations for fraud claims for which statute had expired under section 1821(d)(14)(A)(ii); extending statute of limita-

tions for gross negligence claims for which statute of limitations had not already expired under section 1821(d)(14)(A)(ii)). *Congress is clearly aware of its ability to revive stale claims; and, if it wished, Congress could have provided a lengthy limitations period which explicitly revived stale claims for gross negligence. It did not do so.*

7. RTC also argues that federal concerns require the application of federal tolling rules to their state causes of action. For the reasons stated *infra,* we disagree.

years. It did not. RTC's claims, except for claims arising out of the Baypoint Loan, were barred under Georgia's statute of limitations and tolling laws. We REVERSE the district court's denial of partial summary judgment and REMAND for proceedings consistent with this opinion.

REVERSED and REMANDED.[8]

8. Defendant David Cobb argues that, because he separated from Great Southern in March 1985, he should not be held responsible for the Baypoint Loan, closed in August 1985. On remand, the district court shall make specific factual findings to determine whether Cobb, in fact, participated in the Baypoint Loan.