**IN RE NORPLANT CONTRACEPTIVE
PRODUCTS LIABILITY
LITIGATION**

**No. MDL 1038.**

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 21, 1997.

---

1. In his jurisdictional statement, plaintiff cites only to FCRA, 15 U.S.C. § 1681p.

Chris Parks, Parker and Parks, Port Arthur, Roger Brosnahan of Brosnahan, Joseph & Suggs, Minneapolis, MN, Turner Branch, Branch Law Firm, Albuquerque, NM, for Plaintiff.

John W. Vardaman, F. Lane Heard, III, Steve Farina, Williams & Connolly, Washington, DC, Paul W. Gertz, Larry Germer, Tonya Connell Adams, Germer & Gertz, Beaumont, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIMITATIONS GROUNDS

SCHELL, Chief Judge.

This matter is before the court on Defendants' Motion for Partial Summary Judgment on Limitations Grounds filed on January 28, 1997.[1] Plaintiffs filed a response on February 11, 1997. Defendants filed a reply on February 14, 1997. Upon consideration of the motion, response, reply, and applicable law, the court is of the opinion that Defendants' motion should be DENIED.

---

1. Defendants' motion is directed to the following bellwether plaintiffs: Jennifer Burton, Elaine Haught, Beverly McDaniel, and Kristy Youngblood.

## I. THRESHOLD ISSUES

In order to make a proper determination of the appropriateness of summary judgment on limitations grounds, the court was faced with the following preliminary issues: (1) the applicable statute of limitations periods; (2) the applicability of the discovery rule; (3) the applicability of the *American Pipe* tolling doctrine; and (4) the applicability of the "piggyback" doctrine.

### A. Applicable Limitations Periods

■ Under the doctrine of *Erie Railroad Co. v. Tompkins*,[2] and its progeny, where a claim is derived from state law, state law governs the applicable statute of limitations. Therefore, for purposes of the plaintiffs' claims for strict liability, negligence, and misrepresentation, "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues."[3] Plaintiffs claims under the Deceptive Trade Practices Act are governed by a separate two-year statute of limitations, found within the DTPA itself.[4]

### B. Applicability of the Discovery Rule

■ In Texas, "[t]he limitation period for a products liability action does not begin to run until a plaintiff discovers or should have discovered his injury and its cause in fact."[5] Therefore, Plaintiffs' causes of action (except for breach of warranty) began to accrue when each plaintiff knew or should have known that the alleged side effects she was experiencing were caused by Norplant.

### C. Applicability of the American Pipe Tolling Doctrine

■ In *American Pipe & Construction Co. v. Utah*,[6] the Supreme Court determined that tolling the limitations period during the pendency of a class complaint was appropriate and not inconsistent with the purposes served by statutes of limitations because the class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of' the number and generic identities of the potential plaintiffs who may participate in the judgment."[7] Defendants argue, however, that *American Pipe* is not the law of Texas, and therefore, the court should look to Texas cases to determine if tolling is appropriate.[8] The court agrees that the application of an equitable tolling rule is an issue of state law.[9]

■ A review of Texas caselaw reveals that several appellate courts have followed *American Pipe* in holding that the filing of a class action lawsuit tolls the statute of limitations for the putative class members.[10] How-

---

**2.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** TEX. CIV. PRAC. & REM. CODE § 16.003(a). *See, e.g., Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 331 (5th Cir.1994) (stating, "In Texas, causes of action for personal injuries are governed by a two-year statute of limitations").

**4.** TEX. BUS. & COM. CODE § 17.565. Although Plaintiffs still maintain claims for breach of implied warranty, Defendants' motion does not address those claims. *See* Mem. in Supp. of Defs.' Mot. for Partial Summ. J. on Limitations Grounds at 2 n. 2. Breach of warranty claims are considered contract claims, and are governed by a four-year statute of limitations. TEX. BUS. & COM. CODE § 2.725.

**5.** *Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085, 1092 (5th Cir.1991), *cert. denied*, 503 U.S. 1011, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992) (citations omitted); *see Mann v. A.H. Robins Co., Inc.*, 741 F.2d 79, 81 (5th Cir.1984) (Dalkon Shield case); *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1366 (5th Cir.1984) (same); *see also LaGesse v. PrimaCare, Inc.*, 899 S.W.2d 43,

46 (Tex.App.-Eastland 1995, writ denied) (stating that "the words 'injury' or 'wrong,' when used in the context of the discovery period, require both the discovery of the injury and its cause."); *Corder v. A.H. Robins Co., Inc.*, 692 S.W.2d 194, 196–97 (Tex.App.-Eastland 1985, no writ) (Dalkon Shield case).

**6.** 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

**7.** *Id.* at 555, 94 S.Ct. at 767.

**8.** Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 12–16.

**9.** *See Board of Regents v. Tomanio*, 446 U.S. 478, 483–85, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980); *Resolution Trust Corp. v. Seale*, 13 F.3d 850, 854 (5th Cir.1994).

**10.** *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 654 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.); *Ventura v. Banales*, 905 S.W.2d 423, 425 n. 2 (Tex.App.—Corpus

ever, in *Bell v. Showa Denko K.K.*, the Amarillo Court of Appeals refused to apply the *American Pipe* tolling doctrine in the context of a mass personal injury suit.[11] Defendants argue that *Bell*, the only Texas tolling case involving a mass tort class action, requires this court to do the same.[12] However, the circumstances surrounding the *Bell* court's refusal to toll the statute of limitations are more complex than just the nature of the class action. First, the issue of tolling was not raised until Bell filed her "Motion for Reconsideration and New Trial."[13] Second, only one of the named defendants was also a defendant in the class action.[14] Third, Bell did not file suit until 1992, but suffered an injury as early as 1982.[15] Fourth, the class action was filed in a federal court in another state and involved a variety of claims.[16] Under these circumstances, the *Bell* court determined that the class allegations did not provide the defendant notice of the type and potential number of claims against it, and therefore, the class action did not toll the statute of limitations.[17] Because tolling is an equitable doctrine, the circumstances in *Bell* warranted that court's decision.

Although the *Bell* court stated that *American Pipe* is not the law of Texas, the court did analyze the tolling question as if the basic premise of *American Pipe* did apply by emphasizing the importance of notice to the defendants.[18] Therefore, this court should analyze the tolling issue in the same manner, i.e., did the class complaint provide Defendants with notice of the type and potential number of claims against it? Plaintiffs' class complaint was filed in this court on July 22, 1994, on behalf of "all adult women who have had the Norplant inserted in their bodies and who have sustained damages."[19] Although the complaint alleges a variety of claims, Defendants themselves contend that all of Plaintiffs' claims share at least two elements to be proven.[20] "Plaintiffs must prove (i) that the warnings Wyeth provided to their prescribing physicians failed adequately to disclose the possible risks associated with the contraceptive and (ii) that this alleged deficiency was the legal cause of their injuries."[21] As for the number of potential claims, Defendants need look no further than the number of Norplant Systems prescribed and inserted in order to ascertain that figure.[22] Unlike the uncertainty in the number of potential claimants resulting from a toxic chemical spill, Norplant users are readily quantified through Defendants' own sales data. Because Plaintiffs' class complaint

---

Christi 1995, no writ); *Koch Oil Co. v. Wilber,* 895 S.W.2d 854, 863 (Tex.App.-Beaumont 1995, writ denied); *Bara v. Major Funding Corp. Liquidating Trust,* 876 S.W.2d 469, 471–72 (Tex.App.-Austin 1994, writ denied); *see also National Assn. of Gov't Employees v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 715 n. 25 (5th Cir. 1994) (citing *Grant v. Austin Bridge Constr. Co.,* 725 S.W.2d 366, 370 (Tex.App.-Houston [14th Dist.] 1987, no writ)).

**11.** 899 S.W.2d 749, 757–758 (Tex.App.—Amarillo 1995, writ denied).

**12.** *See* Reply Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 3 & n. 2.

**13.** *Bell,* 899 S.W.2d at 757. Bell did not raise the tolling issue in her response to Defendants' motion for summary judgment, nor in her first motion for new trial. *Id.* at 756–57. This appears to indicate that Bell was not relying on the class complaint to protect her rights as a litigant.

**14.** *Id.* at 758.

**15.** *Id.* at 754–55.

**16.** *Id.* at 758.

**17.** *Id.*

**18.** *Id* (distinguishing *Bell* from *Grant v. Austin Bridge Construction Co.,* 725 S.W.2d 366 (Tex. App.—Houston [14th Dist.] 1987, no writ), where the defendants received fair notice because the plaintiffs "Were a readily discernible group of people claiming injury to certain property rather than personal injury.").

**19.** *See* Pls.' Resp. to Defs.' Mot. for Partial Summ. J. Ex. A (attaching Plaintiffs' original class complaint, *Doe v. Wyeth–Ayerst Labs.,* 878 F.Supp 972, 974 (E.D.Tex.1995)).

**20.** *See* Mem. in Supp. of Defs.' Mot. for Summ. J. at 2 (labeled as motion No. 1 of Defendants' pretrial motions).

**21.** *Id.*

**22.** Defendants have recognized that more than 800,000 Norplant Systems were prescribed and inserted during the three year period, 1991–93, that Plaintiffs Burton, Haught, McDaniel, and Youngblood began using Norplant. Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 1.

provides Defendants with notice of the potential number and type of claims against it, the court recognizes that the limitations periods for Plaintiffs were tolled from July 22, 1994, until the dismissal of the class complaint on August 5, 1996.

### D. Applicability of the "Piggyback" Doctrine

■ As a general rule, *American Pipe* does not apply to toll limitations for subsequently filed class actions.[23] This principle is referred to as the "piggyback" doctrine, a term coined by Judge Higginbotham in *Salazar–Calderon*, and it was established in order to prevent abuse of the equitable tolling doctrine.[24] Relying on *Salazar–Calderon*, Defendants argue that the piggyback doctrine only allows the court to toll limitations for the first-filed class complaint encompassing these plaintiffs.[25] In that case, Defendants contend tolling is only appropriate for the 91 days that the class complaint in *Williams v. Wyeth–Ayerst Laboratories, Inc.*,[26] a California state court case, was pending.[27] This court does not read *Salazar–Calderon* to require such strict adherence to the piggyback doctrine.

*Salazar-Calderon* involved a series of actions brought by several hundred Mexican nationals against the Presidio Valley Farmers Association alleging, among other things, violations of the federal Farm Labor Contractor Registration Act. The first action (the *Lara* suit) was filed as a class action in the El Paso Division of the United States District Court for the Western District of Texas

in April 1979. The El Paso court denied class certification on March 30, 1981. The plaintiffs then filed the *Salazar–Calderon* and *Primero* actions in the Pecos division, each suit naming the same 251 plaintiffs, all of whom were members of the putative class in *Lara*. The district court denied class certification on February 2, 1982. Shortly thereafter, 235 members of the *Salazar–Calderon* and *Primero* putative classes filed a separate complaint (the *Zuniga* suit), in the Pecos division, alleging the same causes of action brought in *Salazar–Calderon/Primeto*. The *Lara* case was transferred from the El Paso division to the Pecos division, and the court consolidated all four cases under the *Salazar–Calderon* heading.[28] The plaintiffs argued to the Fifth Circuit that the limitations periods should toll for not only the *Lara* suit, but also the *Salazar–Calderon/Primero* class complaint. Noting the particular facts of the case, the Fifth Circuit understandably declined to toll the statute of limitations during the period when class certification in *Salazar–Calderon/Primeto* was pending.[29]

■ In this case, however, the particular facts do not present the same danger of abuse to which Judge Higginbotham referred. Although the allegations in *Williams v. Wyeth–Ayerst* did encompass Plaintiffs, the case was filed in another state, not in another division of the Eastern District of Texas. Additionally, there is no indication that Plaintiffs relied on the existence of the California state court case to protect their rights as litigants.[30] While Defendants' in-

---

**23.** *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir.1985).

**24.** *Id.* (stating that "the tolling rule [in class actions] is a generous one, inviting abuse") (quotations omitted).

**25.** *See* Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 17–18.

**26.** No. 95–6198 (Cal.Super. Ct., San Francisco County). *Williams* was filed on November 8, 1993. On February 7, 1994, the Superior Court sustained Wyeth's demurrer and dismissed the class action allegations without leave to amend. The plaintiffs in that case then filed another class action in federal court. *Williams v. Wyeth–Ayerst Labs. Co.*, No. 94–0625 (N.D.Cal.). "The federal court dismissed the class action allegations, ruling that the state court's sustaining of Wyeth's

demurrer was a 'final and appealable judgment ... on the merits of the class certification issue,' warranting estoppel effect. *Williams* now is pending before this court." Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 18 n. 7 (citation omitted).

**27.** *See Id.* at 18 & Tab 21.

**28.** *Salazar–Calderon*, 765 F.2d at 1349–50.

**29.** *Id.* at 1351.

**30.** Plaintiffs state that they "are not attempting to 'piggyback' class actions; they are merely seeking the tolling provisions, provided under *American Pipe*, which would begin on July 22, 1994." Pls.' Resp. to Defs. Mot. for Partial Summ. J. at 12.

terpretation of the piggyback doctrine would certainly prevent abuse, it would also undermine the rationale underlying the *American Pipe* tolling doctrine. The whole purpose behind tolling in the class setting is to promote economy and efficiency by deterring the filing of a multiplicity of suits in order to protect litigants' rights. If plaintiffs are charged with knowledge of a class complaint pending in a state court in another state, plaintiffs' attorneys will certainly file suit individually rather than engage in the time-consuming process of scouring the country to determine if a class complaint encompassing their clients is or was pending.

This court has experienced first-hand the degree to which tolling in the class setting promotes economy and efficiency. Since denial of class certification on August 5, 1996, the court has seen the filing of approximately 2000 cases involving over 20,000 plaintiffs. Therefore, the court finds that the rationale behind equitable tolling should operate to toll the limitations periods for Plaintiffs during the pendency of the class complaint filed in this court. However, because there is no indication that Plaintiffs relied on the California state court case to protect their rights as litigants, the court finds that the California case did not operate to toll the statute of limitations.

## II. Summary Judgment Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[31] Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[33] The substantive law identifies which facts are material.[34] The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.[35] If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense."[36] But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.[37] In this instance, the movant is not required to offer evidence to negate the nonmovant's claims.[38] Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."[39] The nonmovant must adduce affirmative evidence.[40]

## III. Discussion

Now that the court has disposed of the threshold issues, the court will determine the appropriateness of summary judgment on limitations grounds. Because the July 22, 1994 class complaint tolled the statute of limitations until denial of class certification on August 5, 1996, and all of the plaintiffs filed after July 22nd, but before August 5th, Plaintiffs are deemed to have filled suit on July 22, 1994.[41] With July 22, 1994, as a reference point, the court analyzes the appropriateness of summary judgment on limita-

---

31. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986).

32. Fed. R. Civ. P. 56(c).

33. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

34. *Id.*

35. See *id.* at 247, 106 S.Ct. at 2509–10.

36. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original).

37. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

38. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990).

39. Fed. R. Civ. P. 56(e).

40. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2509–10.

41. Plaintiff Burton filed suit on December 7, 1995. Plaintiffs Haught, McDaniel, and Youngblood filed suit on September 29, 1995.

 

tions grounds for each individual plaintiff. The relevant inquiry is whether the plaintiff knew or should have known the cause of her injury(ies) more than two years before July 22, 1994.

*Jennifer Burton*

According to Defendants' own undisputed facts, Plaintiff Burton did not begin to suffer side effects allegedly associated with Norplant until September 1992.[42] Regardless of whether Burton knew the cause of the side effects at that time, her suit is deemed timely filed as a matter of law.

*Elaine Haught*

Plaintiff Haught did not have the Norplant System inserted until January 3, 1993.[43] Therefore, her suit is deemed timely filed as a matter of law.

*Beverly McDaniel*

Plaintiff McDaniel did not have the Norplant System inserted until February 5, 1993.[44] Therefore, her suit also is deemed timely filed as a matter of law.

*Kristy Youngblood*

Plaintiff Youngblood's deposition testimony indicates that she began to suffer from continuous bleeding sometime in April 1992.[45] However, Youngblood testified that she did not attribute any of the alleged side effects she suffered to Norplant until July or August 1992.[46] Based on the summary judgment evidence, the court finds that a genuine issue of material fact exists as to whether Plaintiff Youngblood knew or should have known the cause of her injuries more than two years before July 22, 1994.

## IV. CONCLUSION

Therefore, the court ORDERS that Defendants' Motion for Partial Summary Judgment on Limitations Grounds be hereby DENIED.

---

42. Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 4.

43. *Id.*

44. *Id.* at 5.

45. Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at Tab 5 (deposition testimony of Kristy Youngblood) (stating "the first month[, March 1992,] I didn't bleed and I started after that and never stopped.").

