## COUNCIL, receiver, *v.* BROWN *et al.*

1. In order for a receiver of a banking corporation to bring suit for the use and benefit of the depositors of the bank to recover damages from the directors of the corporation for alleged negligence in failing to exercise ordinary care and diligence in the discharge of their duties, it is necessary that he be specially authorized so to do by order of the court; and if he brings suit and fails to show such authority, he can not recover.

2. Sections 18 and 19 of the act of 1870 (Acts 1870, pp. 139 and 143), which sought to incorporate the Bank of Southwestern Georgia, are repugnant to art. 3, sec. 4, par. 5, of the constitution of 1868 (Code of 1873, § 5056), which provided: "Nor shall law, or ordinance pass, which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," for the reason that it is not competent for the legislature to enact a law incorporating two distinct corporations as in the act of 1870 it sought to do. Even if the act of 1870 were valid as incorporating the Bank of Southwestern · Georgia, by its terms the act was continued in force for the term of thirty years from and after the organization of the bank (which was in 1877); and no renewal of the charter of the bank having been had before the bringing of the present suit in 1920, such suit was without authority of law.

3. Even if the General Assembly had no authority in 1870 (Acts 1870, p. 139) to enact a law incorporating two separate and distinct corporations in one act, yet where such an association actually organized and existed under such colorable authority and used the rights claimed to be conferred by such charter and did business under it as a corporate body, the directors of such organization, who acted as such, will be estopped from denying the corporate existence of such organization as against the corporation itself, its receiver, and third persons who have dealt with it as a corporation.

4. In so far as the petition alleges a cause of action because of loans made by directors in violation of the law and the express terms of the charter, the date of the acts alleged as a basis of recovery was more than four years before the bringing of the suit, and it is barred by the statute of limitations. In so far as the case rests upon a failure to collect the outstanding loans, no facts are alleged showing such negligence or omission of duty on the part of the directors as would render them liable. The general charge that they were negligent in this respect is a mere conclusion of the pleader, and is insufficient to show liability.

5. The allegation that in a certain year dividends had been paid in excess of the earnings for that year shows no liability, in the absence of allegations that dividends were improperly paid, or were not paid out of earnings of the bank made during prior years.

6. The petition did not set out a cause of action, and the court did not err in sustaining the demurrer and in dismissing the action.

No. 2205. JUNE 14, 1921.

Complaint. Before Judge Littlejohn. Sumter superior court. July 14, 1920.

*C. R. McCrory* and *Maynard & Williams,* for plaintiff.

*Shipp & Sheppard* and *Hixon & Pace,* for defendants.

HILL, J. L. G. Council, as receiver of the Bank of Southwestern Georgia, brought suit against W. E. Brown et al., as directors of the bank, to recover damages against such directors for the use and benefit of the depositors of the bank, because of alleged negligence on the part of the directors in failing to exercise ordinary care and diligence in the discharge of their duties as directors. The defendants filed demurrers to the petition, both special and general, on numerous grounds, one of which was that it was not disclosed by what court, or when, Council was appointed a receiver, and that it was not shown that he was so appointed by a court having jurisdiction; and further, that it is not shown that the court appointing him had authorized this suit by either a special or general order. The court sustained all of the demurrers and dismissed the case. To this judgment the plaintiff excepted.

1. The court did not err in sustaining the demurrer on the ground that it did not appear that the plaintiff as receiver had authority from the court to bring the present suit. It was held in the case of *Screven* v. *Clark,* 48 *Ga.* 41, that "a receiver appointed by a chancellor to 'collect' the effects belonging to a corporation, a defendant in a suit pending in chancery, has no authority to bring a suit in order to get possession of the effects, unless he be specially authorized so to do by the order of the chancellor; and if he bring such suit and fail to show the order, he can not recover." And see, to the same effect, *DeGraffenreid* v. *Brunswick & Albany R. Co.,* 57 *Ga.* 23; *Vestel* v. *Tasker,* 123 *Ga.* 213 (51 S. E. 300); 17 Enc. Pl. & Pr. 828; 34 Cyc. 377 (3). The case of *Donehoo* v. *Rogers,* 146 *Ga.* 75 (3), 76 (90 S. E. 382), is not in conflict with the ruling in the above-cited cases. It was merely held in that case that "the granting of an injunction to restrain any unauthorized interference with property in the possession of a receiver is a necessary incident to the power of appointing receivers." In the *Vestel* case and the *Donehoo* case, supra, the court assumed jurisdiction, but in the present case the court declined to assume jurisdiction, and dismissed the case.

2. The sixth ground of the demurrer to the petition was "because the Bank of Southwestern Georgia was incorporated by the act of the General Assembly of Georgia on October 24, 1870 (Acts 1870, p. 139), and the charter expired by operation of law at the

end of thirty years from [that] date, and no acts of defendants or others as directors of the bank in 1912, 1913, and 1914 rendered them liable as directors of such bank." The legislature of this State in 1870 sought to incorporate the Bank of Southwestern Georgia at Americus, under the following caption: " An act to incorporate the Peoples Bank of Macon — also the Bank of Southwestern Georgia at Americus." The act then proceeded to incorporate the Peoples Bank of Macon, in seventeen sections. The 18th section provided that certain named persons and their associates and successors were " constituted and made a body corporate under the name and style of the Bank of Southwestern Georgia, to be located at the City of Americus, in Sumter County, with like powers, privileges, and grants, and with the same liabilities and restrictions as are conferred by this act to incorporate the ' Peoples Bank of Macon.' " The 19th section of the act provided that the capital stock of the Bank of Southwestern Georgia should be $100,000, with the privilege of increasing the capital stock to $300,000. The 20th and last section of the act repeals conflicting laws. The portion of the constitution of 1868, as contained in § 5056 of the Code of 1873, provides that " Every bill before it shall pass shall be read three times and on three separate days in each house, unless in cases of actual invasion or insurrection. Nor shall law, or ordinance pass, which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." Both the caption and the body of the act of 1870, supra, clearly indicate that the act refers to more than one subject-matter, viz., the chartering of two banking corporations in the same act. In *Ex parte Conner,* 51 *Ga.* 571, it was held, in 1874, that " Under art. 3, sec. 4, par. 5, of the constitution of this State, which declares that ' no law shall be passed which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof,' it is not competent for the General Assembly to enact a law incorporating three separate and distinct corporations [three military organizations], or reviving by name three charters which had become obsolete." And see, to the same effect, *Christie* v. *Miller,* 128 *Ga.* 412 (57 S. E. 697). We think that the present case falls within the ruling made in the *Conner* case. The inhibition contained in art. 3, sec. 7, par. 8, of the constitution of 1877 is substantially the same as that contained in the constitution of 1868

under review. It seems therefore that the act of 1870, chartering the Bank of Southwestern Georgia, was void because it offended the provisions of the constitution of 1868 set out above.

Even if the act of 1870 was valid as incorporating the Bank of Southwestern Georgia, it expired by its terms in thirty years from the date of its organization (in 1877); and it does not appear that at the expiration of thirty years the charter was ever renewed; and that being so, at the time the present suit was brought in 1917 there was no charter authority, either originally or by amendment, to bring the present action. Nor, as stated in the first division of the opinion, was there any authority shown from the chancellor authorizing the bringing of the suit. The Civil Code (1910), § 2241, provides that a corporation is dissolved by the expiration of its charter. And see *Logan* v. *Western & Atlantic R. Co.*, 87 *Ga.* 533 (13 S. E. 516); *Venable* v. *Southern Granite Co.*, 135 *Ga.* 508 (69 S. E. 822, 32 L. R. A. (N. S.) 446). This court will take judicial notice of the names of all companies chartered by the legislature. *Jackson* v. *State*, 72 *Ga.* 28 (2).

3. But it is insisted by the plaintiff, even if the Bank of Southwestern Georgia was not legally incorporated, and if it is not a de jure corporation, that as to the people conducting its business and parties dealing with it it is a de facto corporation. A de facto corporation has been defined to be an association which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of law, has no legal right to corporate existence. *Brown* v. *Atlanta Ry. &c. Co.*, 113 *Ga.* 462 (39 S. E. 71); *Howard* v. *Long*, 142 *Ga.* 789 (83 S. E. 852); *McTighe* v. *Macon Construction Co.*, 94 *Ga.* 306 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153); 14 C. J. 204, § 215. And as to what constitutes a de facto corporate existence, see 14 C. J. 214, § 223; *Brooke* v. *Day*, 129 *Ga.* 694 (59 S. E. 769); *Ward* v. *Bryan*, 144 *Ga.* 769 (87 S. E. 1037). It is also argued that the directors of the Bank of Southwestern Georgia, which purported to be a corporation and for which they have been acting as such directors, are estopped to deny its corporate existence as against the corporation itself, its receiver, and third persons who have dealt with it as a corporation. In *Torras* v. *Raeburn*, 108 *Ga.* 345 (2), 348 (33 S. E. 989), this court held: "In a suit brought by a creditor of a corporation against persons alleged to be stock-

holders in such corporation, to recover unpaid subscriptions for stock, such persons, if shown to be subscribers for stock, will not be allowed in such a suit to call in question the corporate existence of the alleged corporation, nor to show any irregularities in its creation or organization, provided the contract sued on is within the powers apparently possessed by the alleged corporation." In the body of the opinion it was said: " The finding of the auditor that the defendants were subscribers for stock was also based upon sufficient evidence. Such being the case, it is not permissible for the defendants to call in question the legality of the charter or the regularity of the organization thereunder, as against those who have dealt with the corporation and extended credit to it as such. 4 Thomp. Corp. § 5254; Taylor, Priv. Corp. (4th· ed.) § 537 et seq.; 2 Mor. Priv. Corp. § 752; *Ga. Ice Co.* v. *Porter,* 70 *Ga.* 637." See also 14 C. J. 237, § 259. In 14 C: J. 247, § 274, it is said that such estoppel of directors, stockholders, and officers applies even after the expiration or repeal of the charter of the corporation, as to acts and dealings after such time. And see, in this connection, *Hargroves* v. *Chambers,* 30 *Ga.* 580; Civil Code (1910), § 2246, which provides that " The dissolution of a corporation, from any cause, shall not in any manner affect any collateral or ultimate or other liability legally incurred by any of its officers or members." In the case of *Howard* v. *Long,* 142 *Ga.* 789, 793 (83 S. E. 852), it was said: " Indeed it has been said that the liability of the corporators to the creditors of a de facto corporation rests upon the ground that its organizers, who acted as agents in contracting the liability, warranted their authority, viz.; that the corporation had been properly organized and was entitled under the law to engage in the business for which it was corporated. Farmers Co-operative Trust Co. *v.* Floyd, 47 Ohio St. 525 (26 N. E., 110, 12 L. R. A. 346, 21 Am. St. R. 846)."

Hence we conclude that as applied to the facts alleged in the petition the Bank of Southwestern Georgia, which was organized as a corporation and existed under the colorable authority of the act of 1870, and its officers, used the rights claimed to be conferred by such act and did business under it as a corporate body, and its directors acted as such, and that the corporation held itself out as a corporation and did business as such; and the directors of such organization are estopped from denying its corporate existence

relatively to those who dealt with the bank believing that it was such.

4. Having decided that the directors are estopped by their conduct from denying its corporate existence, the next question which presents itself is whether the directors are liable under the allegations of the petition and under the law as applicable to the facts set out in the petition. The declaration alleges, that Charles L. Ansley, W. E. Brown, W. A. Dodson, N. M. Dudley, Thomas Harrold, H. R. Johnson, and A. A. Arrington were directors of the bank for the years 1914 and 1915; that during the year 1915 J. E. Ferguson, J. J. Wilson, and A. W. Smith (now deceased) were directors of the bank; and that for the years 1912 and 1913 Arrington, Ansley, Brown, Dodson, Dudley, Harrold, Johnson, and Smith composed the board of directors of the bank. By amendment it was alleged, that Dodson, Johnson, Ansley, Smith, Harrold, and Dudley were members of the board of directors of the bank for the year 1905 and each year thereafter until the closing of the bank in 1915, and that in January, 1910, W. E. Brown was elected a member of the board of directors and was annually thereafter re-elected and continued a member of the board to the closing of the bank in 1915. It was further alleged, that from the time of the organization of the bank in 1877 to March, 1915, when its doors were closed, no authority was conferred by the stockholders or by the board of directors upon the president or cashier of the bank or any officer thereof to make loans. In May, 1911, the board of directors were furnished by the officers of the bank a list of excessive loans and of loans to officers, a copy of which statement was attached to the petition. The total amount of the excessive loans made to five parties at this time was approximately $80,000. The amount of loans to officers and directors of the bank at that time was approximately $90,000. It was further alleged, that none of the loans were made as the law requires, in that neither the board of directors nor even a majority of them approved in writing the security offered for the loans, and for this reason the loans were illegal and there was a breach of the duty of the board of directors in permitting the loans to be made; that notwithstanding more than three fourths of the capital stock of the bank was loaned to five individuals who were not officers and directors, and notwithstanding ninety per cent. of the capital stock

was loaned to seven of the officers and directors of the bank, the directors, whose duty it was to see that the indebtedness of the parties was paid at maturity, permitted the loans to be continued and to remain unpaid from that date until the closing of the bank in 1915, with the exception of the loans to G. M. Eldridge, W. E. Brown, and Thomas Harrold; that in failing to enforce the settlement and payment of the loans which were made in violation of the law, the directors were derelict in their duty, and it was a breach of their trust as officers and directors of the bank; that in failing to collect the indebtedness due the bank the directors failed to exercise ordinary and reasonable care in the management of the affairs of the bank; that if the directors had exercised ordinary and reasonable care in the affairs of the bank and in the collection of the illegal loans, the depositors would not have suffered loss and the bank would not have become insolvent. It was further alleged, that under the charter of the bank and the laws of Georgia it was the duty of the directors to pass upon all applications for loans to be made by the bank; that the bank was unauthorized to make any loans to any of the directors without the written consent of a majority of the board of directors, and was prohibited from making loans to any one person without the approval of the board of directors; entered upon the minutes of the bank, of the security offered for a loan of more than ten per cent. of the capital stock; that, notwithstanding these duties assumed by the directors during the years referred to, they permitted and allowed A. W. Smith, the president of the bank, to make loans to directors of the bank without the written approval of the majority of the board of directors, and to make loans in excess of the capital stock of the bank without the board of directors approving the security offered for the loans; that the board of directors, in failing to have meetings as the business of the bank required, and in failing to oversee the making of loans, violated the trust imposed upon them by law, and failed to exercise ordinary care in preserving the assets of the bank for the benefit of its creditors and stockholders, and with an utter disregard of the duty imposed upon them they permitted the bank's assets to be wasted and its business to be operated after knowledge of the insolvency of the bank and after they had knowledge of the fact that the president of the bank was making loans in violation of its charter and the laws of the State; all of which resulted in

loss of large sums. A list of the loans made by the bank to officers of the bank without the approval of the board of directors, which resulted in loss to the bank on account of the alleged negligence of the board of directors, aggregated $70,073.41; and by reason of the foregoing facts it was alleged that the defendants are liable to the plaintiffs, for the use and benefit of the depositors of the bank, in that sum. It was further alleged that on January 14, 1914, the board of directors declared and paid a dividend to the stockholders of eight per cent. on the capital stock, when as matter of fact the bank had not for the year 1913 earned the sum of $8,000, the amount of the dividend so declared. The net income of the bank for the year 1913 was alleged to be only $7,460, while the earnings for the year 1914 were less than the expenses of the bank. It was alleged further, that the board of directors during the years 1912 and 1913 increased the very large indebtedness of J. W. Burke, which at that time was $37,434.12, by lending him in 1913 the sum of $15,000, the directors knowing at the time that the assets of Burke were insufficient; and that as a result of the continued lending of the money of the bank to Burke the bank was forced to take the assets of Burke in settlement of his obligation, which, on being sold by the receiver after the failure of the bank, produced the sum of approximately $18,000, making a total loss to the bank of $20,000; that all of the losses herein alleged resulted from the want of the exercise of ordinary care and diligence on the part of the board of directors in permitting the officers of the bank to make loans in excess of ten per cent. of the capital stock in violation of law, and in making loans to its officers without complying with law. The total amount due by the bank at the time of its failure in 1915 to its depositors was approximately $90,000, and out of the assets of the bank dividends have been paid to the depositors to the amount of about $15,000, making the bank at the present indebted to the depositors in the sum of $75,000, which was occasioned by the mismanagement of the directors, and for which the directors are liable in this action.

A list of the officers of the bank who had borrowed from the bank was attached to the petition, and the list showed that one director had borrowed the sum of $27,376.42, of which $16,000 was paid, and the loss sustained by the bank by reason of the loan was $11,000.42. Another director borrowed from the bank

the sum of $24,953.63 and paid $16,523.04, with a resulting loss of $8,430.59 to the bank. The capital stock of the bank is shown by the charter to be $100,000. The amount above loaned to these officers exceeded ten per cent. of the capital stock of the bank, and it does not appear that the loans were made and approved by a majority of the directors of the bank and evidenced by their signatures in writing.

5. It is alleged in the 11th paragraph of the petition that on January 14, 1914, the board of directors of the bank declared a dividend to the stockholders of eight per cent. on the capital stock, when as a matter of fact the bank had not for the previous year, 1913, earned the amount of dividend which had been declared by the directors. This paragraph was demurred to because it was not alleged which one of the defendants participated in declaring the dividend; and because it was not alleged that the defendants knew that the net earnings of the bank did not authorize a dividend; and because under the allegations, if any dividend was illegally paid, it was more than two years from that date to the date of filing this suit, and it is therefore barred by the statute of limitations. The demurrer was both general and special. The allegation is subject to the demurrer, in that it shows upon its face that the cause of action is barred by the statute of limitations. It is also subject to demurrer because the petition is not sufficiently clear to exclude the idea that the dividends declared were not paid out of earnings of the bank made before the year 1913.

It will be seen from the foregoing statement of facts that in so far as the petition seeks to set out the loans that were made by the officers of the bank, so as to make the directors liable, it appears from the petition that these loans were made prior to May, 1911; and consequently they are barred by the statute of limitations, as insisted by the demurrer. No authority is cited for the proposition that a suit of this character is barred within two years, as contended by the defendants. We hold that the suit would not be barred until after a period of four years from the time the cause of action arose. *Crawford* v. *Crawford*, 134 *Ga.* 114 (2), 119 (67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas. 932); *Frost* v. *Arnaud*, 144 *Ga.* 26 (85 S. E. 1028).

The allegation that the directors were negligent in not collect-

ing the loans which had been made by certain bank officials other than the directors did not authorize the maintenance of the suit, because such allegation is a mere conclusion of the pleader. The petition should allege in what respect the directors failed in their duty. See, in this connection, *Woodward* v. *Stewart*, 149 *Ga.* 620 (101 S. E. 749).

In view of the rulings made above, it is unnecessary to decide the other· grounds of the demurrer. It follows from what has been said that the court did not err in sustaining the demurrer and in dismissing the case.

*Judgment affirmed. All the Justices concur.*