[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15409
_____

D.C. Docket No. 7:11-cv-03307-SLB

BLACK WARRIOR RIVERKEEPER, INC.,
FRIENDS OF HURRICANE CREEK,
NELSON BROOKE,
JOHN WATHEN,

Plaintiffs - Appellants,

versus

BLACK WARRIOR MINERALS, INC.,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 13, 2013)

Before PRYOR, ANDERSON, Circuit Judges, and RESTANI,[*] Judge.

PRYOR, Circuit Judge:

_____

[*]Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

This appeal presents the issue whether an exception can swallow the general rule about the limited role of citizen suits under the Clean Water Act:  that is, whether a citizen can evade the requirements of notice and a 60-day waiting period, 33 U.S.C. § 1365(b), by suing a discharger of pollutants for violations of the "new source" standards of the Act, id. § 1316, instead of violations of that discharger's state-issued permit, even when that permit incorporates those standards.  Congress has provided citizens a limited role in the enforcement of the Act, and ordinarily a citizen must provide notice of alleged violations to a discharger and federal and state authorities and wait 60 days before filing suit against a discharger.  The 60-day waiting period serves as a "mandatory condition precedent to the filing of a citizen suit under the Clean Water Act."  Nat'l Envtl. Found. v. ABC Rail Corp., 926 F.2d 1096, 1097 (11th Cir. 1991).  If a federal or state authority files suit to remedy the alleged violations before a citizen files suit, the Act bars a citizen from filing suit, 33 U.S.C. § 1365(b), because Congress intended for citizen suits "to supplement rather than to supplant governmental action," Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60, 108 S. Ct. 376, 383 (1987).  But the Act provides an exception to this general rule when a citizen complains about at least some violations of new source performance standards.  See 33 U.S.C. § 1365(b).  The wrinkle in this appeal concerns whether that exception applies when a discharger has a permit that

2

incorporates the standards for new sources, but a citizen refrains from alleging any violation of that permit.  We have described the national permitting system as the "centerpiece" of the Clean Water Act, Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1225 (11th Cir. 2009), and the Supreme Court has explained that a citizen suit against a permit holder "will necessarily" be for violations of a permit, EPA v. Cal. ex rel. State Water Res. Control Bd., 426 U.S. 200, 223, 96 S. Ct. 2022, 2033 (1976).  A citizen suit that alleges that a discharger violated its permit is subject to the general rule of notice and a 60-day waiting period.

Several citizens of Alabama—Black Warrior Riverkeeper, Inc., Friends of Hurricane Creek, John Wathen, and Nelson Brooke—sued Black Warrior Minerals, Inc., which operates a coal mine in Alabama, for violations of the new source performance standards, but the citizens refrained from alleging that Black Warrior Minerals had violated its permit.  The citizens filed their suit before the 60-day waiting period expired.  Alabama later sued Black Warrior Minerals for the violations of its permit.  In the citizens' suit, the district court granted summary judgment in favor of Black Warrior Minerals.  Because the Act requires a citizen who sues a permit holder to sue for a violation of that permit and wait 60 days after giving notice of that violation before filing suit, we affirm.

## I.  BACKGROUND

3

With the approval of the Environmental Protection Agency, the Alabama Department of Environmental Management administers a program that issues permits for dischargers of pollutants, as part of the National Pollutant Discharge Elimination System, under the Clean Water Act.  Approval of Alabama's NPDES Program, 44 Fed. Reg. 61,452 (Oct. 25, 1979).  The Department issues permits that satisfy the new source performance standards promulgated by the Environmental Protection Agency under the Act.  Ala. Admin. Code r. 335-6-6-.14(3)(a); see 33 U.S.C. § 1342(b) (Oct. 9, 1985).  In 2008, the Department issued Black Warrior Minerals permit No. AL0071358 for its Fleetwood coal mine to discharge into Hurricane Creek and an unnamed tributary to that creek.  The permit incorporates the performance standards for "new source coal mines" and requires Black Warrior Minerals to submit monitoring reports to the Department on a quarterly basis that are available for inspection by the public on the website of the Department.  See Coal Mining Point Source Category; Effluent Limitations Guidelines & New Source Performance Standards, 50 Fed. Reg. 41,296-01 (Oct. 9, 1985).

On September 2, 2011, several citizens—Black Warrior Riverkeeper, Inc., Friends of Hurricane Creek, John Wathen, and Nelson Brooke—served Black Warrior Minerals and federal and state authorities with notice of alleged violations of the Clean Water Act and other statutes.  The notice listed violations of both the new source performance standards and the permit for the Fleetwood mine.  The

4

allegations about the violations of the new source performance standards and the violations of the permit were identical, except where the conditions of the permit were more stringent than the new source performance standards.

Eleven days after the citizens provided Black Warrior Minerals and the federal and state authorities with notice of the alleged violations, they filed a citizen suit against Black Warrior Minerals. The complaint alleged violations of only the new source performance standards. See 33 U.S.C. § 1316. The complaint made no mention of any violation of the permit that regulated Fleetwood mine. Black Warrior Minerals moved to dismiss the complaint because the citizens had failed to wait 60 days after providing notice of the alleged violations, id. § 1365(b), and because the citizens had failed to allege a violation of the permit issued to Black Warrior Minerals for the Fleetwood mine.

The district court granted summary judgment in favor of Black Warrior Minerals on the ground that the liability of a discharger that holds a permit must be determined in the light of the conditions of its permit. The district court relied on EPA v. California ex rel. State Water Resources Control Board, for the proposition that "a suit against a permit holder will necessarily be brought under the definition [found in section 1365(f)(6) for violations of a discharger's permit]." 426 U.S. at 223, 96 S. Ct. at 2033. Because the permit controls the discharger's liability, the district court held that the "plaintiffs cannot proceed under the exception to

5

§ 1365(b) for violations of [the new source performance standards] when the discharger has a [state-issued] permit." The district court then concluded that the failure of the citizens to comply with the 60-day waiting period barred their complaint. After the citizens filed their suit based on violations of the new source performance standards, the Department sued Black Warrior Minerals in an Alabama court based on violations of its permit.

## II.  STANDARD OF REVIEW

We review the "grant of summary judgment de novo, applying the same legal standards as the district court." Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). We review questions of "pure statutory interpretation" de novo. Burlison v. McDonald's Corp., 455 F.3d 1242, 1245 (11th Cir. 2006).

## III.  DISCUSSION

Whether a citizen may evade the 60-day waiting period and sue a permit holder for violations of the new source performance standards when those standards are incorporated in the permit is an issue of first impression before this Court. The citizens argue that the plain language of the citizen suit provision, 33 U.S.C. § 1365, allows them to elect to sue a permit holder for violations of the new source performance standards, for violations of the permit conditions, or for both kinds of violations, see id. § 1365(f)(3), (f)(6). Black Warrior Minerals responds that a permit defines a discharger's obligations under the Clean Water Act, and a

citizen must sue a permit holder for violations of the conditions of the permit. See id. § 1365(f)(6).

We agree with Black Warrior Minerals. When read in the context of the entire Clean Water Act, the citizen suit provision requires a citizen to sue a permit holder for violations of its permit if the permit covers the alleged effluent discharges. In this circumstance, a citizen complainant cannot evade the 60-day waiting period.

The National Pollutant Discharge Elimination System provides the primary means of enforcing the effluent limitations of the Clean Water Act, and every discharger of pollutants must obtain a permit as part of that system. EPA v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 71, 101 S. Ct. 295, 301 (1980); State Water Res. Control Bd., 426 U.S. at 205, 96 S. Ct. at 2025. The Act empowers the Administrator of the Environmental Protection Agency either to issue permits or to approve a permit program established by a state so long as the program conforms to federal guidelines. 33 U.S.C. § 1342(a)(1), (b). All permits, whether issued directly by the Administrator or through a state system, must meet all "applicable requirements of sections 1311, 1312, 1316, 1317, [1318,] and 1343." Id. § 1342(b)(1)(A), (b)(2); see id. § 1343(a)(3) ("The permit program of the Administrator under paragraph (1) of this subsection, and permits issued thereunder, shall be subject to the same terms, conditions, and requirements as

7

apply to a State permit program and permits issued thereunder under subsection (b) of this section.").  Permits "serve[] to transform generally applicable effluent limitations and other standards . . . into the obligations . . . of the individual discharger."  State Water Res. Control Bd., 426 U.S. at 205, 96 S. Ct. at 2025. "[Section 1342] itself does not mandate either the Administrator or the States to use permits as the method of prescribing effluent limitations," E.I. du Pont de Nemours & Co. v. Train, 430 U.S. 112, 120, 97 S. Ct. 965, 971 (1977) (emphasis added), but the Act provides that "[c]ompliance with a permit issued pursuant to [section 1342] shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1312, 1316, 1317, and 1343 of this title, except any standard imposed under section 1317 of this title for a toxic pollutant injurious to human health."  33 U.S.C. § 1342(k).  Because compliance with a permit affords dischargers an "absolute defense" to most enforcement actions under the Clean Water Act, Inland Steel Co. v. EPA, 574 F.2d 367, 370 (7th Cir. 1978), permit holders are not governed by intervening changes in regulations for the duration of their permits and need not relitigate whether their permits are strict enough, E.I. du Pont de Nemours & Co., 430 U.S. at 138 n.28, 97 S. Ct. at 980 n.28.

The Clean Water Act enables citizens to commence a civil action against "any person . . . who is alleged to be in violation of . . . an effluent standard or

limitation under this chapter." 33 U.S.C. § 1365(a)(1). For citizen suits, the Act

defines "effluent standard or limitation" in the following seven ways:

> (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; (6) a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (7) a regulation under section 1345(d) of this title.

Id. § 1365(f). For our purposes, the most relevant subsections are subsection (3),

which concerns the new source performance standards, and subsection (6), which

concerns conditions of a permit.

Although the Act provides for citizen suits, it erects two hurdles for citizens

to overcome before they commence a civil action against a discharger. First, a

citizen must provide notice of the alleged violation to the discharger and federal

and state authorities and then wait 60 days before filing suit:

> No action may be commenced—
>
> > **(1)** under subsection (a)(1) of this section—
> >
> > > **(A)** prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]

Id. § 1365(b).  Second, the Act bars a citizen from filing suit against a discharger if a federal or state authority sues the discharger first, although the citizen may intervene in that suit:

> No action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

Id.  "[T]he purpose of § 1365(b) is to give the alleged violator an opportunity to bring itself into compliance with the Act, and thus make the citizen suit unnecessary[,]" and "to effectuate Congress's preference that the Act be enforced by governmental prosecution."  ABC Rail Corp., 926 F.2d at 1099.

Congress created two exceptions to the 60-day waiting period for citizen suits against a discharger for violations of the new source performance standards and for citizen suits against the Administrator for failure to establish a list of toxic pollutants and effluent limitations:

> No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation . . . except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title.

33 U.S.C. § 1365(b); see also ABC Rail Corp., 926 F.2d at 1098.  But Congress provided no exception to the 60-day waiting period for citizen suits about violations of permit conditions.  See 33 U.S.C. § 1365(f)(6).

10

Because statutory construction is a "holistic endeavor," United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988), we must interpret the citizen suit provision in the context of the entire Act to determine whether a citizen may avoid the 60-day waiting period by suing a permit holder for violations of the new source performance standards when those standards are incorporated into the permit.  See Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 1266–67 (11th Cir. 2006); In re Int'l Admin. Servs., Inc., 408 F.3d 689, 707 n.7 (11th Cir. 2005); United States v. Rigel Ships Agencies, Inc., 432 F.3d 1282, 1288 (11th Cir. 2005) ("In any question of statutory interpretation, '[w]e do not look at one word or term in isolation, but instead we look to the entire statutory context.'" (quoting United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999) (alteration in original))).  The Supreme Court has instructed that the "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" and that a court should "fit, if possible, all parts into a harmonious whole."  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132–33, 120 S. Ct. 1291, 1301 (2000) (internal quotation marks omitted).  As Sir Edward Coke explained, "If any section [of a law] be intricate, obscure, or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious

11

intent of the other."  Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts 167 (2012) (alteration in original) (quoting 1 Edward Coke, The First Part of the Institutes of the Laws of England, or a Commentary upon Littleton § 728, at 381a (14th ed. 1791) (1628)).

A related principle of statutory interpretation is that a court should also avoid interpreting a provision in a way that would render other provisions of the statute superfluous.  See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114–15, 121 S. Ct. 1302, 1308–09 (2001); Lowe v. SEC, 472 U.S. 181, 208 n.53, 105 S. Ct. 2557, 2572 n.53 (1985) ("[W]e must give effect to every word that Congress used in the statute.").  If two possible meanings exist for a provision, we should interpret the statute in a manner that gives all provisions independent operation.  See Scalia & Garner, supra, 176.  Yet, if the text surrounding the provisions could lend support for two independent meanings, but that interpretation would lead to a strained reading of at least one provision, we need not force independent meanings.  See Gutierrez v. Ada, 528 U.S. 250, 254–55, 120 S. Ct. 740, 744 (2000).

Standing alone, the citizen suit provision, 33 U.S.C. § 1365, "is not a provision of which Congress' limpid prose puts an end to all dispute," see Gwaltney, 484 U.S. at 57, 108 S. Ct. at 381, about whether a citizen may proceed against a permit-holding discharger for violations of the new source performance

12

standards, 33 U.S.C. § 1316.  The provision exempts a citizen from the 60-day waiting period for suits based on violations of the new source performance standards, but it does not exempt suits based on violations of permit conditions.  Id. § 1365(b).  The section defining an "effluent standard or limitation," id. § 1365(f), provides seven alternative definitions, including both a "standard of performance under section 1316" and "a permit or condition thereof issued under section 1342," id. § 1365(f)(3), (6).  The citizen suit provision does not delineate whether a citizen may file a suit for violations of the new source performance standards when the discharger holds a permit that incorporates those standards.  See id. § 1342.  But section 1365(b) does prefer governmental enforcement of permit conditions to citizen suits.

When we read sections 1365 and 1342 together, the correct reading of the Act becomes clear.  Section 1342 establishes that the permitting scheme controls the vast majority of enforcement proceedings against a permit holder.  Section 1342(k) affords an absolute defense to a permit holder that complies with the conditions of its permit against citizen suits based on violations of sections 1311, 1312, 1316, 1317, and 1343.  This absolute defense evidences the central role of the permitting system under the Act.  See Inland Steel Co., 574 F.2d at 370–71, 373 ("The entire function of paragraph (k), as we read it, is to qualify the enforcement rights and authority granted by [the citizen suit provision] of the Act

13

. . . .").  And permits, whether issued by the Administrator directly or by an approved state program, must incorporate all of the new source performance standards.  33 U.S.C. § 1342(a), (b); State Water Res. Control Bd., 426 U.S. at 224 n.38, 96 S. Ct. at 2033–34 n.38.  "Thus, the principle means of enforcing the pollution control and abatement provision of the [Clean Water Act] is to enforce compliance with a permit" because a permit is tailored to the specific discharger.  See id. at 223, 96 S. Ct. at 2033.

This citizen suit against a permit holder, if allowed, would disrupt the statutory scheme for the enforcement of permits.  To allow a citizen to evade the 60-day waiting period by suing a permit holder for alleged violations of the new source performance standards without regard to the conditions of the discharger's permit would both undermine the overarching permitting scheme and nullify the statutory preference for governmental enforcement.  The novel complaint filed in this case is a thinly veiled attempt to beat the State of Alabama to the courthouse.  The Department has sued Black Warrior Minerals for violations of its permit, and the citizens are now barred from bringing suit based on those violations.  See 33 U.S.C. § 1365(b)(1)(B).

The citizens argue that requiring a citizen to sue a permit holder based only on section 1365(f)(6), which governs violations of permits, renders section 1365(f)(3) superfluous because the broad prohibition in section 1365(f)(1) covers

14

all non-permitted dischargers, but section 1365(f)(3) remains operative in at least two situations. First, a citizen may sue for violations of section 1316 when the alleged violator, although a permit holder, discharges pollutants that were not disclosed to the permit-issuing authority. Those discharges would not be contemplated by the permit and would not come within the absolute defense provided by section 1342(k). Cf. Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md., 268 F.3d 255, 269 (4th Cir. 2001) (stating that the permit shield not only protects against liability for compliance, but also prevents liability from attaching to "all discharges adequately disclosed to the permitting authority"). Second, a citizen may sue for violations of section 1316 when the discharger does not have a permit. In that case, the discharger would be subject to the otherwise governing new source performance standards. Our interpretation also does not render superfluous the definition contained in section 1365(f)(1), which allows citizens to sue for "an unlawful act under subsection (a) of section 1311," because section 1316 applies only to new sources and section 1311(a) applies to all dischargers.

The decision of the Supreme Court in State Water Resources Control Board confirms our interpretation of the citizen suit provision: citizen suits against permit holders must proceed under section 1365(f)(6) instead of under section 1365(f)(3) when the discharges are covered by the permit. In that decision, the

15

Supreme Court explained in unequivocal terms that a citizen suit against a permit holder must be filed under section 1365(f)(6) and allege a violation of the discharger's permit:

> Of the six subdivisions of [section 1365(f)] defining "effluent standard or limitation," only [section 1365(f)(6)] refers to any of the standards or limitations <u>as translated into the conditions of an NPDES permit</u>.    Thus, while [sections 1365(f)(2)–(4)] permit suits for violation of effluent standards or limitations promulgated under [sections 1311, 1312, 1316, and 1317], a suit against a permit holder will necessarily be brought under the definition in [section 1365(f)(6)]; unless the plaintiff can show violation of the permit condition, violation of the [Act] cannot be established.

426 U.S. at 223, 96 S. Ct. at 2033.  Because Black Warrior Minerals is a permit holder, any suit against it for violations of the conditions of its permit must "necessarily be brought under" section 1365(f)(6).  Id.

The parties dispute whether the above-quoted explanation of how a citizen suit against a permit holder must proceed under section 1365(f)(6) is part of the holding of that decision or only dicta.  The holding of a decision includes both the result and "those portions of the opinion necessary to that result by which we are bound."  United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (internal quotation marks omitted).  Dicta, on the other hand, includes the portions of an opinion that are not necessary to deciding the case.  Id.  Either way, the result is the same here.

16

We are persuaded that the relevant discussion is part of the holding.  In State Water Resources Control Board, the Supreme Court reversed the decision of the Ninth Circuit that had incorrectly held that federal dischargers must obtain state-issued permits under the Clean Water Act.  426 U.S. at 210–11, 96 S. Ct. at 2027–28.  The Supreme Court rejected each of the grounds relied upon by the Ninth Circuit, and the dismantling of each ground was necessary to the result the Court reached.  The discussion of the citizen suit provision arose in the context of refuting the assertion of the Ninth Circuit that the term "requirement" in section 1365(f)(6) means "any permit or condition thereof" of a federal discharger imposed by a state.  Id. at 222–23, 96 S. Ct. at 2033.  The Ninth Circuit interpreted the term "requirement" in section 1365(f)(6) to mean something different from the terms "standard" and "limitation" in sections 1365(f)(2)–(4), which would arguably give independent support for a holding that federal dischargers must obtain a state-issued permit.  The Supreme Court ruled that the correct meaning of the term "requirement" was any condition imposed, whether "from standards and limitations promulgated by the Administrator or from stricter standards established by the State."  Id. at 224, 96 S. Ct. at 2033.  The Court explained that the "salient feature [of section 1365(f)(6)] is not distinguishing standards from requirements, but distinguishing standards and limitations, on the one hand, from the permit conditions embodying those standards on the other."  Id. at 224 n.38, 96 S. Ct. at

17

2034 n.38.  And, to make sense of these terms, the Supreme Court concluded that section 1365(f)(6) means that a suit against a permit holder must necessarily be for a violation of its permit.

The citizens contend that a footnote in Parker v. Scrap Metal Processors, Inc., suggests that we have read this language as dicta, but we disagree.  386 F.3d 993, 1006–07 n.15 (11th Cir. 2004).  In Parker, we concluded that the Act grants subject-matter jurisdiction over citizen suits for violations of state or federal standards incorporated into a permit.  Id. at 1019.  We stated, "On this question, the Supreme Court, although in dicta, has appeared to say yes, suggesting that citizens can sue under § 1365 regardless of whether the suit is based on standards promulgated by the EPA, or more stringent state standards that have received EPA approval."  Id. at 1007 n.15 (citing State Water Res. Control Bd., 426 U.S. at 224, 96 S. Ct. at 2022).  We did not address the reasoning of the Supreme Court that a citizen suit against a permit holder must necessarily proceed under section 1365(f)(6).

But, even if the relevant portion of the opinion in State Water Resources Control Board is dicta, it is "well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court" and "is not something to be lightly cast aside."  See Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir. 2006) (internal quotation marks omitted).  As we have stated, "[T]here is dicta and then there is

dicta, and then there is Supreme Court dicta." Id.  The Supreme Court carefully considered the structure and meaning of the definitions contained in section 1365(f) of the citizen suit provision, and it concluded that suits against permit holders to enforce regulations incorporated into a permit must proceed under section 1365(f)(6).

## IV.  CONCLUSION

Because the citizens failed to wait the required 60 days before they filed suit against Black Warrior Minerals, we **AFFIRM** the summary judgment in favor of Black Warrior Minerals.

**AFFIRMED.**