**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Southern Community Bank, Plaintiff,**

v.

**James S. CAMERON, George R. Davis, Sr., Robert B. Dixon, Jr., Richard J. Dumas, William W. Leslie, Jackie L. Mack, Gary D. McGaha, Thomas D. Reese, and William M. Strain, Defendants.**

**Civil Action No. 3:13–cv–102–TCB.**

United States District Court,
N.D. Georgia,
Newnan Division.

Dec. 11, 2013.

Ashley Elizabeth Wilson, George P. Shingler, Joyce Gist Lewis, Shingler Lewis LLC, Atlanta, GA, Christopher D. Kiesel, Kyle M. Keegan, Susannah M. Denicola, Keegan, Denicola, Kiesel, Bagwell, Juban & Lowe, LLC, Baton Rouge, LA, for Plaintiff.

Elizabeth Gingold Greenman, Robert R. Long, IV, Alston & Bird, LLP, Atlanta, GA, for Defendants.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Before the Court is Defendants' motion to dismiss for failure to state a claim [10].

## I. Background

Defendants are former directors of

Southern Community Bank,[1] a state-chartered, nonmember bank headquartered in Fayetteville, Georgia. On June 19, 2009, less than ten years after its founding, the Georgia Department of Banking and Finance closed the bank. That same day the FDIC–R was appointed receiver.

On June 11, 2012, within three years of its appointment, the FDIC–R and Defendants entered into a written agreement that purported to toll the statute of limitations for six months. The FDIC–R promised not to sue Defendants during the tolling period without prior written notice, and in return Defendants promised not to plead any statute-of-limitations defenses related to the tolling period. This tolling agreement was extended five times, and the tolling period under the final agreement ended at 11:59 p.m. on June 18, 2013.

On June 18, 2013, nearly four years after its appointment and just hours before the sixth tolling agreement expired, the FDIC–R filed this action. It asserts claims of negligence and gross negligence against each Defendant for his or her part in approving the subject loans—seventeen loans approved by the bank's directors between July 23, 2004 and January 22, 2008.

Defendants have moved to dismiss for failure to state a claim. They argue that all of the FDIC–R's claims are untimely. For the reasons below, their motion will be granted in part and denied in part.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for failure to state a claim where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.,*

695 F.3d 1194, 1199 (11th Cir.2012). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted); *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1325 (11th Cir.2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

In considering a defendant's motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Powell v. Thomas,* 643 F.3d 1300, 1302 (11th Cir.2011). But the court need not accept the plaintiff's legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937.

A statute-of-limitations defense can support dismissal under Rule 12(b)(6) only if it is clear from the face of the complaint that the statute of limitations has run,

---

1. Gary D. McGaha was also a former senior bank officer.

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.,* 522 F.3d 1190, 1194 (11th Cir.2008), and "it appears beyond doubt that [the plaintiff] can prove no set of facts that toll the statute," *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n. 13 (11th Cir.2005) (quoting *Knight v. E.F. Hutton & Co.,* 750 F.Supp. 1109, 1112 (M.D.Fla.1990)) (internal quotation mark omitted).

### III. Discussion

■ The Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) provides a federal statute of limitations for claims brought by the FDIC–R: the so-called "extender statute." 12 U.S.C. § 1821(d)(14); *RTC v. Artley,* 28 F.3d 1099, 1101 (11th Cir.1994). This statute establishes a two-step inquiry that governs whether the FDIC–R timely filed suit on a claim that accrued before its appointment.

■ The first question concerns whether the claim was viable under state law on the date the FDIC–R's appointment. This is because FIRREA generally does not "revive stale state law claims." *Artley,* 28 F.3d at 1101 (quoting *FDIC v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993)). The second question concerns whether the action was filed before the limitations period in the extender statute expired. *See id.* Thus, a claim that accrued before the FDIC–R's appointment is timely only if it was both viable at the time of appointment and filed before the running of the extender statute.

### A. Step One: The Viability of the FDIC–R's Claims Under Georgia Law When It Was Appointed

■ Here, each subject loan gives rise to claims of negligence and gross negli-

gence against the bank directors who approved it. These claims were viable on the date of the FDIC–R's appointment (June 19, 2009) only if the Georgia statute of limitations had not run by that date. The parties agree that a four-year limitations period governs claims against bank directors and officers who were allegedly negligent or grossly negligent in approving loans. But they disagree about when such claims accrue; Defendants favor the date that the loans were approved, while the FDIC–R favors the date the loans went into default. As a result, the viability of the FDIC–R's claims is called into question for only five of the seventeen loans: those made prior to June 19, 2005.

■ When a cause of action accrues for allegedly approving bad loans is a question of state law. *FDIC v. Stahl,* 89 F.3d 1510, 1522 (11th Cir.1996). Over eighty years ago the Georgia Supreme Court answered this question, holding that the limitations period begins to run when the allegedly bad loans are made. *Mobley v. Faircloth,* 174 Ga. 808, 164 S.E. 195, 195 (1932) (syllabus by the court).[2] Indeed, as that court explained a few years later, this has long been the rule in Georgia: "Limitations against actions for the breach of directors' duties in the management of the bank's affairs have been consistently held to run from the time of the breach." *Bank of Jonesboro v. Carnes,* 187 Ga. 795, 2 S.E.2d 495, 496 (1939) (citing *Mobley* and other, older cases). And while *Carnes* was decided during the Great Depression, the FDIC–R has not identified, nor has the Court found, a Georgia opinion that articulates a different rule.

Yet the FDIC–R argues at length that *Mobley* is no longer good law. In its view,

---

**2.** In *Mobley,* the Georgia Supreme Court answered certified questions from the Georgia Court of Appeals. The syllabus summarizes its answers.

the Georgia legislature abrogated *Mobley* by implication in 1975 when it revised and modernized Georgia's banking statutes, adopting the Financial Institutions Code of Georgia. The FDIC–R contends that after this revision negligence claims against bank directors and officers follow the general common-law rule: they accrue only when every element of the claim—including actual damage—is present. And because actual damage from an alleged bad loan does not occur until it actually fails, the four-year limitations period for each subject loan did not begin to run until after June 19, 2005.

 The Eleventh Circuit's decision in *Artley* short-circuits whatever currency the FDIC–R's argument might have. Circuit precedent—even on matters of state law—is binding unless "specifically contradicted" by a subsequent state-court opinion. *Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1451 (11th Cir.1991). In *Artley,* which was decided nearly twenty years after the 1975 statutory revision, the court treated *Mobley* as authoritative Georgia law. And in the nearly twenty years since, no published Georgia opinion has disagreed with that analysis or set forth a conflicting view of Georgia law. For this reason, the Court rejects the FDIC–R's argument.

In a footnote, the FDIC–R appears to encourage the Court to ignore *Artley.* For instance, it characterizes the *Artley* court's statements about when negligence claims against bank directors and officers accrue as dicta and suggests that these statements are "devoid of any analysis and . . . contrary to Georgia Supreme Court precedent"—both before and after *Art-*

ley—on when negligence claims generally accrue. In short, the FDIC–R suggests that the court was wrong about Georgia law: it changed with the 1975 revision, and the *Artley* court just missed it.

The FDIC–R misreads *Artley.* There, the general question concerned the timeliness of the Resolution Trust Corporation's claims against bank directors and officers who were allegedly negligent (a state-law claim) and grossly negligent (a FIRREA and state-law claim) in approving loans.[3] The Eleventh Circuit agreed with the district court that Georgia law imposes a four-year limitations period for negligence actions against bank directors. 28 F.3d at 1101 (citing *Council v. Brown,* 151 Ga. 564, 107 S.E. 867, 871 (1921)). And because the statute of limitations began to run when the loans were made, the court summarized the RTC's predicament: "if no tolling occurred, RTC loses its opportunity to sue on all but one loan"—the lone loan approved within four years of the receiver's appointment. *Id.*

 The RTC argued that the court should apply the federal common-law tolling doctrine of adverse domination and thus find that all of its claims were viable when its predecessor-in-interest was appointed receiver.[4] But the court refused to do so, holding instead that all viability-related questions in FIRREA cases involving claims of negligence and gross negligence against bank directors and officers—including questions of accrual and tolling—are governed by state law. Thus, the viability of the RTC's claims turned on whether Georgia law permitted tolling in similar circumstances. Relying on *Mobley,* which "presented a similar situation"

---

3. The RTC also asserted state-law claims for breach of fiduciary duty and breach of contract (but not fraud).

4. Adverse domination tolling occurs when the alleged wrongdoers (here and in *Artley,* the bank directors and officers) remain in control of the legal entity. *Artley,* 28 F.3d at 1101 n. 1.

because "the pertinent loans were made more than four years before the suit was filed," the court held that it would not. 28 F.3d at 1102.

Although *Artley* focused on *Mobley*'s holding that claims against bank directors and officers are not tolled even if the alleged wrongdoers remain in control of the bank, the court reached this question only because it agreed with the district court that all but one of the RTC's claims were stale at the time of appointment; the other allegedly bad loans were approved more than four years before that date. Thus, *Artley* reflects the Eleventh Circuit's belief that *Mobley* accurately states Georgia law not only on when a cause of action for negligence or gross negligence against bank directors and officers accrues,[5] but also on whether adverse domination tolling applies in such actions. And because *Artley*'s discussion of *Mobley* was in a "portion[ ] of the opinion necessary to th[e] result," it is a holding and thus binds this Court. *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1304–05 (11th Cir.2013) (quoting *United States v. Kaley*, 579 F.3d 1246, 1253 n. 10 (11th Cir.2009)).

Accordingly, the claims related to the five loans approved before June 19, 2005 were stale when the FDIC–R was appointed and will be dismissed. As for the claims related to the loans approved after that date, their viability is undisputed. Thus, to ascertain whether they were timely, the Court moves to the second step in the timeliness inquiry.

**B. Step Two: Whether the Extender Statute Ran Before the FDIC–R Filed This Action**

For tort claims, like the FDIC–R's negligence and gross negligence claims

against Defendants, the extender statute provides:

(14) Statute of limitations for actions brought by . . . receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC–R] shall be—

. . . .

(ii) in the case of any tort claim . . ., the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of— ·

(i) the date of the appointment of the [FDIC–R]; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(A)-(B).

The parties disagree over the meaning of clause (A)(ii). Specifically, they dispute whether this clause restarts the limitations period for state-law claims that accrued before the FDIC–R's appointment. The FDIC–R says that it does; Defendants say that it does not. Here, because this case was filed more than three but less than four years after the FDIC–R's appointment, if the FDIC–R is correct, then the viable claims were timely;

---

5. For example, both *Artley* and *Mobley* rely on the 1921 Georgia Supreme Court case *Council v. Brown*, which set the four-year limita- tions period for claims against bank directors or officers who allegedly approve bad loans.

otherwise, they were not (absent some sort of tolling).

The Eleventh Circuit has never considered whether the extender statute restarts the applicable state limitations period once the FDIC–R is appointed. But other courts have, and most have held that the limitations period begins to run anew upon appointment.[6] So if that period is longer than the three-year default period for tort claims (or the six-year default period for contract claims), then the state period sets the timeliness deadline under § 1821(d)(14)(A). Yet in two related cases, the District of Kansas recently appeared to reach the opposite conclusion.[7] Interestingly, both sides believe that the "plain language" of the extender statute supports their respective positions. Accordingly, Defendants encourage the Court to follow the District of Kansas's lead, while the FDIC–R urges the Court to adopt the majority view.

On this question, unlike the claim-accrual question, it is the FDIC–R who has the better argument. Its claims related to the twelve subject loans approved after June 19, 2005 were timely.[8] Thus, Defendants'

motion to dismiss these claims will be denied.

### 1. The Plain Language of § 1841(d)(14)

Based on the heading "[d]etermination of the date on which a claim accrues," Defendants contend in their reply brief that subparagraph (B) refers to only subclause (A)(ii)(I) because, unlike subclause (A)(ii)(II), this subclause refers to "the 3–year period *beginning on the date the claim accrues.*" They note that if Congress had intended subparagraph (B) to apply to subclause (A)(ii)(II), and thus to restart the applicable state-law limitations period, "it would have written 'the period applicable under State law *beginning on the date the claims accrues.*'"[9] Lastly, Defendants assert that to adopt the interpretation favored by the FDIC–R—and the majority of courts that have considered this question—"requires reading into the Extender Statute words that Congress specifically omitted, a step that has been rejected by the Supreme Court."

The Court disagrees. The majority of courts and the FDIC–R are correct: the

---

6. *E.g., FDIC v. McSweeney,* 976 F.2d 532, 536 (9th Cir.1992); *FDIC v. Elmore,* 2013 WL 6185236, at *4 (N.D.Ill. Nov. 22, 2013); *FDIC v. Shea & Gould,* No. 95–cv5491(JFK), 1997 WL 401822, at *7 (S.D.N.Y. July 17, 1997); *RTC v. S & K Chevrolet,* 868 F.Supp. 1047, 1055 (C.D.Ill.1994), *vacated in part on other grounds by* 923 F.Supp. 135 (C.D.Ill.1996); *RTC v. Fiala,* 870 F.Supp. 962, 975–76 (E.D.Mo.1994); *RTC v. Foley,* 829 F.Supp. 352, 355 (D.N.M.1993); *RTC v. Aycock,* No. 92–0761, 1993 WL 534127, at *3 (E.D.La. Dec. 14, 1993); *RTC v. Gallagher,* 800 F.Supp. 595, 599 (N.D.Ill.1992), *aff'd,* 10 F.3d 416 (7th Cir.1993); *RTC v. Int'l Ins. Co.,* 770 F.Supp. 300, 303 (E.D.La.1991).

7. *Nat'l Credit Union Admin. Bd. v. Barclays Capital, Inc.,* No. 12–2631–JWL, 2013 WL 3471369, at *2 (D.Kan. July 10, 2013); *Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC,* 939 F.Supp.2d 1113, 1136

(D.Kan.2013) (order for reconsideration). These appear to be the only decisions in support of this position: Defendants cite no other cases, nor has the Court found any.

8. Because this conclusion is dispositive, the Court will not consider the other arguments the parties raise: whether the tolling agreements are enforceable under § 1821(d)(14)(A); whether the tolling agreements justify equitably tolling the statute of limitations; and whether the FDIC–R's interpretation of the statute is entitled to any deference under *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

9. In making this argument, Defendants mistakenly cite the substantively identical, but distinct, section of FIRREA, § 1787(b)(14). Yet it is clear from the context that they meant to cite § 1821(d)(14).

plain language of the statute establishes that the appointment of the FDIC–R restarts the applicable state limitations period.

For present purposes, § 1841(d)(14) has two separate but related subparagraphs: (A) and (B). Subparagraph (A) provides "two possible sources for the limitations period [for each type of claim]: the [default] period provided in the federal statute . . . and the period applicable under state law." *FDIC v. Wabick*, 335 F.3d 620, 626 (7th Cir.2003). It is the longer period that applies. 12 U.S.C. § 1821(d)(14)(A); *Wabick*, 335 F.3d at 626. In other words, subparagraph (A) provides instructions for calculating a claim's limitations period "[i]n general": compare the default period to the applicable state-law period and apply the longer of the two.

Once calculated, subparagraph (B) then provides additional instructions: it explains how to determine when this limitations period begins to run. There are two options: the date of (i) the FDIC–R's appointment, or (ii) the claim's accrual. And the claim accrues on—the statute runs from—the later date. 12 U.S.C. § 1821(d)(14)(B); *accord* cases cited in note 6, *supra*.

Here, the parties agree that the limitations period is four years and that the cause of action accrued before the FDIC–R's appointment. Given these facts, and under the plain language of the extender statute, this action had to be filed within four years of the FDIC–R's appointment— the longer period and later start date. It was. So the claims related to the twelve loans approved after June 19, 2005 were timely.

### 2. Whether *Artley* Contradicts the Court's Conclusion

Defendants also posit that the Eleventh Circuit's decision in *Artley* establishes that the FDIC–R's appointment does not reset the limitations period because *Artley* held that claims related to allegedly bad loans accrue when made under Georgia law.

The Court disagrees. Defendants' argument conflates the step-one viability analysis (a state-law question) with the step-two extender-statute analysis (a federal-law question). To be sure, *Artley* is clear that under Georgia law the limitations period for a claim of negligently approving a bank loan runs from the making of the loan. But *Artley* is equally clear that this state-law rule only affects the inquiry into the claim's viability as of the FDIC–R's appointment; if the claim was viable, "the period provided in [the extender statute] *then begins to run*." 28 F.3d at 1101 (emphasis added). Indeed, the court reiterates, "Only if the bank's claims are still viable under state law on [the date of the FDIC–R's appointment] does *the limitations clock start to run anew under FIRREA's limitation provision*." *Id.* at 1102 (emphasis added) (quoting *Dawson*, 4 F.3d at 1309). Yet neither *Artley* nor *Dawson*, the Fifth Circuit opinion upon which *Artley* relies, explains how the limitations clock or what triggers the clock's start under the extender statute. Thus, on these issues *Artley* is neither binding nor instructive.

### 3. The Decisions of the Kansas District Court

Lastly, Defendants point to two decisions from the District of Kansas as support for its view that the state limitations period in subclause (A)(ii)(II) runs from the date upon which the cause of action accrued under state law. *See Nat'l Credit Union Admin. Bd. v. Barclays Capital, Inc.*, No. 12–2631–JWL, 2013 WL 3471369, at *2 (D.Kan. July 10, 2013); *Nat'l Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F.Supp.2d 1113, 1136 (D.Kan.2013) (order for reconsideration).

These cases are not persuasive. First, the favorable statements that Defendants reference appear to be dicta. Second, even if they are not, they are merely conclusory. The court neither examines the statute's structure, discloses the reasons for its conclusion, nor distinguishes the numerous contradictory (albeit nonbinding) decisions. Under these conditions, and in view of the plain statutory language of the extender statute, the Court declines Defendants' invitation to follow these cases.

## IV. Conclusion

Defendants' motion to dismiss for failure to state a claim [10] is GRANTED IN PART AND DENIED IN PART. The FDIC–R's claims related to the five subject loans approved before June 19, 2005 are DISMISSED.